# Smith *versus* Carroll.

1. A verbal promise by an executor, either with or without assets, to a
legatee to pay a legacy, since the Act of April 26th, 1855, P. L., 308,
imposes no personal liability upon him, and no right of action against
him can therefore be maintained.

2. A testator bequeathed certain sums to his daughters and devised a
farm to his son, and directed that the son should pay to his estate the
sum of $500 to enable his executor to pay off the said legacies.   He
had previously directed his executor to pay his debts.   The personal
property, including the $500 paid by the son, was not sufficient to pay
the debts and the legacies.   *Held* (*a*), that the legacies were not a
charge upon the land; (*b*) that it was the duty of the executor to first
pay the debts; (*c*) that in first paying the debts he was not guilty of a
breach of trust, and was not personally liable to the legatees.

March 17th, 1886.   Before Mercur, C. J., Gordon, Pax-
son, Trunkey, Green and Clark, JJ.   Sterrett, J.,
absent.

Error to the Court of Common Pleas of *Susquehanna
county:* Of January Term, 1886, No. 330.

This was an appeal from a judgment of a justice of the
peace in an action of assumpsit brought by Edward Carroll
and Margaret Carroll, his wife, in right of Margaret Carroll
against James Smith.   It was referred to W. D. Lusk, Esq.,
as referee under the Act of April 6th, 1869, and its supple-
ment of January 20th, 1870.   Pleas, non assumpsit, payment
with leave, &c.   Estoppel by matter of record, statute of
limitations, and no assets.

The following are the facts as found by the referee.

Patrick Smith, a man living in Middletown, this county,

possessed of three quite valuable farms, also personal property to the amount of some $800 and not much in debt, a judgment lien of some $800 being on his real estate, made his last will and testament dated December, 1875. January 29th, 1876, the said Patrick Smith died. The will was probated August 21st, 1876.

James Smith, his son, and Mary Smith, his widow, was named in said will as executors. Letters granted the 26th of August, 1876.

General inventory filed September 2d, 1876, of $500. Also, the same date, widow's inventory of $301 filed. The widow, Mary Smith, died within thirty days after this, leaving James Smith the sole surviving executor of the will of Patrick Smith, deceased.

The will provides for three of his sons by leaving each of them a farm; another son, Daniel, he leaves a legacy of $200. At the time of his making his will, at the time of his death, and at the time of probating said will, there were six daughters. Catherine, intermarried with Wm. O'Donnell; Mary, intermarried with ——— Sears; Rosanna; Ellen, intermarried with ——— Baker; Margaret, intermarried with E. Carroll; and Ann, intermarried with John Hogan; for which the said Patrick Smith, deceased, provided in his will as follows:

Fourth item in will: "I order and direct my personal property to be disposed of as follows, to wit:

"Two hundred dollars to my daughter Catherine.

"One hundred dollars to my daughter Mary.

"One hundred dollars to my daughter Rosanna.

"One hundred dollars to my daughter Ellen.

"One hundred dollars to my daughter Margaret; and to my daughter Ann the sum of two hundred dollars."

Fifth item: "I will and bequeath to my son Owen the farm bought of Peter O'Doud, the same that Owen now lives upon; the said Owen is hereby enjoined and required to pay to my estate the sum of five hundred dollars to enable my executors to pay off the legacies bequeathed to my daughters as before stated."

James Smith, executor of Patrick Smith, deceased, brought suit in the Common Pleas of Susquehanna county against Owen Smith, as of No. 760, April Term, 1878, said suit being commenced April 8th, 1878, in trespass on the case in assumpsit. The claim against Owen being for the $500 in the fifth item of said will, Owen Smith having taken the farm under the will of his father, Patrick Smith, deceased, became liable for said amount. Judgment was entered the 28th day of August, 1878, on said suit, for $520, with interest from the

[Smith *v.* Carroll.]

12th day of August, 1878, the same having been paid by Owen Smith, the defendant, and received by James Smith. the executor, as plaintiff.

James Smith, executor of Patrick Smith, deceased, filed a partial account in said estate, December 17th, 1880, wherein the accountant charged himself to the amount of the inventory and appraisement, $500; also $520 received of Owen Smith.

The accountant claimed credit for quite a large amount of credits, bringing the estate in debt $382.45. Exceptions filed and Auditor appointed on exceptions November 14th, 1881. Auditor found a balance in the executor's hands of $4.97. Exceptions to the Auditor's report filed and argued before the court; exceptions dismissed and the report of the Auditor confirmed finally.

Margaret Carroll, the plaintiff in this case, has not received any of the legacy that was left to her by her father, Patrick Smith.

That James Smith, this defendant, has often agreed to pay the respective sums that were going to his sisters, since receiving the same.

We find the fact that the estate of Patrick Smith, deceased, is solvent.

We find that Margaret's legacy in the will was $200.

That James Smith promised to this plaintiff, or her attorney, to pay the agreed amount that was going to her.

The Referee directed judgment to be entered for the plaintiff in the sum of $93.60.

The defendant filed, *inter alia*, the following exceptions to the Referee's report.

The Referee erred in not affirming the fourth point of the defendant.

" Fourth. There being no promise in writing, or memorandum, or note of such promise, signed by the defendant, plaintiffs cannot recover."

Ans. " The fourth point we do not affirm."

The Referee erred in declining to find as requested in the twenty-first request.

" Twenty-first. That there is no evidence of any trust relationship between the plaintiffs and defendant, or that the plaintiffs ever reposed any trust upon said defendant, or that said defendant ever undertook or accepted any trust for said plaintiffs except such as by law exists between them by virtue of the position of executor of the estate of Patrick Smith, deceased, held by the defendant."

Ans. " The twenty-first request; to find such a fact as requested at this time we decline, but answer this request in our findings of the facts and conclusions of law."

[Smith *v.* Carroll.]

Judgment having been entered as directed by the Referee, the defendant took this writ, assigning for error, *inter alia,* the above exceptions to the Referee's report.

*W. H. & H. C. Jessup* (*Safford & O'Donnell* with them) for plaintiff in error.—Now since the Act of 26th of April, 1885, which is so plain and explicit, there is no case which holds an executor liable to pay the debts of the testator to a legatee or other person, upon his mere verbal promise, but on the contrary, whenever the question has arisen, this court has affirmed the application of the statute to such cases: Sidle *v.* Anderson, 45 Pa. St., 464; Wilson *v.* Long, 12 S. & R., 59; Okeson's Appeal, 59 Pa. St., 99; Burt *v.* Herron, 66 Pa. St., 404.

*O'Neill and E. L. Blakeslee* (*Post* with them), for defendant in error.—The Act of April 26th, 1855, does not apply. James Smith was not merely an executor, but was a devisee. He was devised a farm of sixty-two acres. After having used the five hundred dollars set apart for the payment of these demonstrative legacies, and after having used all the personal property, as a fund for the payment of debts, the estate was still owing a small indebtedness. Without having used this five hundred set apart for the payment of these demonstrative legacies, James Smith, and Owen and Patrick, would have been obliged to have raised it out of their own pockets to have kept their farms.

When James Smith promised to pay these legacies because he had wrongfully used the fund, it was not simply a promise of an executor to pay on the mere consideration of assets. But he, as a devisee, had converted a part at least of the fund in paying his own debt, or that which must come out of his devise. He had had the benefit of it.

The consideration of his promise, therefore, was founded on a benefit to himself, and a long line of authorities decides that such a promise is not within the statute: see vol. 1, Purdon's Digest, 831, n. *g;* Justice *v.* Tallman, 86 Pa. St., 147.

Mr. Justice GREEN delivered the opinion of the court, April 26th, 1886.

We think the radical difficulty in this case is that it is an action against one who is an executor, to hold him personally liable upon a verbal promise to pay a legacy. Since the Act of 26th April, 1855, Purd. 724, pl. 4, the decisions appear to be uniform that such a promise confers no right of action against the executor individually. Thus we said in Sidle *v.* Anderson, 9 Wr., p. 468: "If there was a promise by the administrator to be personally liable, it had no other consideration than that

[Smith *v.* Carroll.]

implied in the allegation of an existing *devastavit.* There was no express promise to pay on any such ground, and the case of Wilson *v.* Long, 12 S. & R., 59, very clearly determines that no implied contract to pay arises out of a *devastavit.* This would be decisive of the case on grounds independent of the statute. But suppose the promise rested on this ground expressly. It would be a promise by the administrator to answer ' the damage out of his own estate,' for ' the debt of another,' and this would certainly be within the statute and not binding for want of a writing to that effect." It is clear, therefore, that upon the theory of a *devastavit* there could be no liability upon an implied promise, and an expressed promise would create no personal liability without a writing. In the following cases it was held that the existence of assets, when coupled with a verbal promise only, was not sufficient to impose an individual liability. In Okeson's Appeal, 9 P. F. S., on p. 101, SHARSWOOD, J., said: " The cases appear to hold that on a promise by an executor or administrator to pay a legacy or distributive share in consideration of assets, the consideration and promise must be co-extensive : Rann *v.* Hughes, 7 T. R., 350, note : Butt *v.* Humphrey, 22 Conn., 317. However that may be, it is clear that the executor can not be made liable *de bonis propriis* on an oral promise on the mere consideration of assets. That would be " to charge him upon a promise to answer damages out of his own estate, and therefore within the Act of April 26th, 1855 : Pamph. L., 308. It has been accordingly held in Hay *v.* Green, 12 Cush., 282, that a verbal promise by an administrator to pay a distributive share in the estate of a decedent was within the statute of frauds, though there were assets ; and in Philpot *v.* Briant, 7 Bingh., 717, a promise by the executor of an acceptor of a bill of exchange to pay out of his own estate in consideration of forbearance, is held to be void if not in writing."

In Burt *v.* Herron, 16 P. F. S., on p. 404, we said: " To charge the executors upon their own promise, with proof of assets, the action must have been against them personally and their promise in writing, by the Act of April 26th, 1855."

Whether, therefore, there were assets in the hands of the defendant in this case, or not, his verbal promise to pay the plaintiff her legacy, imposed no personal liability upon him, and no right of action was thereby conferred. This objection, as it touches the jurisdiction, is fatal at any stage of the case : Black's Ex'r *v.* Black's Ex'r, 10 Cas., 354 ; Musselman's Appeal, 101 P. S. R., 169.

The argument that the legacy is demonstrative, and the defendant a trustee who appropriated it to his own use, is of no avail. The testator simply directed that his personal estate

should be disposed of in legacies to his daughters, and he directed that his son Owen should pay, not to the daughters, but to his estate, five hundred dollars to enable the executors to pay the legacies. But he had previously directed his executors to pay his debts and funeral expenses, and all the personal estate, including the money paid by Owen, was not sufficient for that purpose. Doubtless the testator supposed that the money to be paid by Owen, together with the other personal estate, would enable the executors to pay both the debts and legacies, but in this he was mistaken, and that is the plaintiffs' misfortune. The legacies were not charged upon Owen's land, nor was he directed to pay the money to the daughters. Even the executor was not so directed. The money was to be paid to him simply to enable him to pay the legacies. The superior duty, however, of paying the debts must first be performed, and the personal fund, no matter how constituted, must first be applied to that purpose, in the absence of specific directions to the contrary.

These considerations render unnecessary any examination of the other assignments of error.

Judgment reversed.