## Appeal of Henry Henke and Henry Ichler, Exrs.

---

## Caroline Wertheim's Estate.

Where plaintiffs, by virtue of their power as executors, for the purpose of having state loan certificates which stood in the name of their testatrix, transferred to them as executors, delivered the same to bankers for that purpose, attaching to said certificates an irrevocable power of attorney duly executed by them in blank, and said bankers pledged said certificates and procured a loan thereon from an innocent third party—in an action by the executors to recover from the third party said certificates it was *held:*

NOTE.—To the same effect see Westinghouse v. German Nat. Bank, 196 Pa. 249, 46 Atl. 380; McManus v. Laughlin, 186 Pa. 498, 40 Atl. 992; Gilbert v. Erie Bldg. Asso. 184 Pa. 554, 39 Atl. 291. The pledgee is not protected where there are circumstances to put him upon inquiry. Ryman v. Gerlach, 153 Pa. 197, 25 Atl. 1031, 26 Atl. 302; Westinghouse v. German Nat. Bank, 188 Pa. 630, 41 Atl. 734.

(*a*) That the fact that the executors neglected to designate themselves in the power of attorney as executors was of no significance. The question is like that of any other sale of personal property, one of title, the source of which need not appear on the bill of sale.

(*b*) That when possession of certificates was given up by the executors, coupled with evidence of ownership in the holder, the real owners were estopped from claiming the same from an innocent holder who had given value therefor.

(*c*) That the act of May 1, 1873, P. L. 87, as amended by the act of May 2, 1879, P. L. 47, making certain formalities essential to the valid assignment of state loans, relates only to the assignment of loans which have been issued in lieu of loans originally made payable to bearer, and that the loan in question being issued under the authority of the act of April 20, 1877, P. L. 5, which required that all certificates of loan issued thereunder should be registered, does not fall within the aforesaid acts as to the mode of assignment.

Where a bank loaned a sum of money upon a demand note and two certificates of state loan as collateral security, and the parties who obtained the loan also gave their check to the bank for the amount of the loan, and the check was not put to their credit but in the bank drawer where it remained, and afterwards the bank had sufficient funds in its hands which belonged to the parties who effected the loan to satisfy their check, but did not, and subsequently demanded the payment thereof and the parties were unable to comply, and it appearing from the facts that the parties effecting the loan had acquiesced in the failure of the bank to make such an appropriation of the funds in their hands to satisfy the check,—it was *held* that the giving of the check to the bank was not such an irrevocable appropriation of the funds of the debtors in the hands of the bank to the payment of the loan as to prevent even the parties themselves from agreeing that the transaction should be treated as though no such direction for an appropriation had been made, and the loans were not paid so as to release the collaterals.

Wood's Appeal, 92 Pa. 379, 37 Am. Rep. 694, considered and followed.

(Argued March 23, 1888.  Decided May 7, 1888.)

January Term, 1888, No. 247, E. D.    Appeal from a decree of the Common Pleas No. 4 of Philadelphia County dismissing exceptions to a master's report in equity, September Term, 1884, No. 358.    Affirmed.

A bill in equity was filed November 28, 1884, by Henry Henke and Henry Ichler, executors of the last will and testament of Caroline Wertheim (formerly Caroline Henke), deceased, against Louis K. Ladner and William T. Ladner, lately trading as Ladner Brothers, and William F. Harrity, assignee of Ladner Brothers; the Commercial National Bank, and the Farmers' & Mechanics' National Bank, to recover from the

Commercial National Bank two certificates of state loan, standing in the name of Caroline Henke.

The case was referred to S. S. Hollingsworth, Esq., as master, who reported substantially as follows: ·

Mrs. Caroline Henke was the owner of two certificates, one of them for $1,000 and the other for $700, of the 5 per cent loan of the state of Pennsylvania. She died in May, 1884, leaving a will duly proved and recorded, by which she appointed the plaintiffs her executors.

The executors, desiring to divide the loan and have it registered in the name of Mrs. Wertheim's children, called to see Ladner Brothers about it, and left the certificates with them for that purpose, and executed a blank power to transfer the same, dated July 7, 1884, and in the following words:

Irrevocable:

Power of attorney to transfer loans of the commonwealth of Pennsylvania.

To be acknowledged before an alderman or justice of the peace, a notary public or commissioner of deeds, for the state of Pennsylvania.

Know all Men by these Presents, That ——, for value received, have bargained, sold, assigned, and transferred, and by these presents do bargain, sell, assign, and transfer unto —— ——, the sum of seventeen hundred ($1,700) —— of the loans of the commonwealth of Pennsylvania, standing in the name ——, on the books of the Farmers' & Mechanics' National Bank of Philadelphia, and do hereby constitute and appoint ——, true and lawful attorney, irrevocable for ——, and in —— name and stead but to —— use, to sell, assign, transfer, and set over, all or any part of the said stock, and for that purpose to make and execute all necessary acts of assignment and transfer, and one or more persons to substitute with like full power, hereby ratifying and confirming all that the said attorney, or substitute or substitutes, shall do therein by virtue of these presents.

In witness whereof, We have hereunto set our hand and seal the 7th day of July, in the year of our Lord 1884.

Signed, sealed and delivered in the presence of

    William B. Biester, Henry Ichler,  [L. S.]
    William T. Ladner, Henry Henke,  [L. S.]
[Seal.]   ·      Signature guaranteed,
            Ladner Brothers.

Be it known, that on the —— day of ——, in the year A. D. one thousand eight hundred and ——, before me, ——, personally appeared ——, known to me to be the person named in the foregoing letter of attorney, and acknowledged the said letter of attorney to be —— act and deed.

In testimony whereof, I have hereunto set my hand and affixed my —— seal the day and year aforesaid.

On the same day Mr. Ladner, one of the firm of Ladner Brothers, sent a messenger to the Commercial Bank between 2 and 3 o'clock, to inquire whether he could get a loan on Pennsylvania state 5's; he was told he could.

Just before 3 o'clock, Mr. Louis K. Ladner himself, one of the firm, called at the Commercial Bank and obtained for his firm a loan of $2,000, for which he gave the check of Ladner Brothers, dated July 7, 1884, payable to the order of due bill, and a collateral note of Ladner Brothers, drawn to their order and indorsed by them for $2,000, dated July 7, 1884, stating that they had delivered $1,700 state of Pennsylvania 5's, as collateral security therefor.

They gave the bank the certificates belonging to the plaintiffs, a blank power of attorney to transfer the same executed by the plaintiffs, a certified copy of the will, and another certificate that letters testamentary on said will had issued to the plaintiffs. All these papers were handed to the bank at the time the loan was made on the afternoon of July 7. At this date the Ladner Brothers were in good standing with the bank, which believed them to be solvent. At the time the loan was made Louis K. Ladner requested the bank to keep their check in their drawer until next day, when they would take it up. They did not take it up next day, and never have taken it up nor returned the loan. The bank asked Ladner Brothers to take up the loan but did not press the matter, as they considered the security which they had sufficient.

On July 8, and for a considerable time thereafter, the bank had sufficient money in its hands in the name of Ladner Brothers to have paid the loan of $2,000, for which they held Ladner Brothers' check, and which was due on the 8th.

The plaintiffs were not the owners of any state loan, and there was no state loan standing in their names.

The contention of the plaintiffs resolves itself substantially into two points:

1. That the delivery of the certificates with the blank power of attorney, coupled with evidence that the parties signing these certificates were the executors of Caroline Henke, was not sufficient to give the bank a title to the certificates;

2. That the bank having money in hand sufficient to pay the debt created by this loan, and having failed to apply it to that purpose, the real owners of the collateral which it held are entitled to have the collaterals.

The master will consider these points in their order:

It is settled (Wood's Appeal, 92 Pa. 379, 37 Am. Rep. 694) that the possession of a certificate of stock accompanied by an irrevocable power of attorney to transfer the same, either filled up or in blank, is presumptive evidence of ownership, whether the power of attorney be signed by one who is the absolute owner, or by his executor; and that, therefore, the purchaser from such holder, or one who advances him money upon the faith of such certificate as collateral, is entitled to hold the same as against the true owner.

The present case differs from Wood's Appeal only in two particulars: instead of being a certificate of stock, it is a certificate of state loan; and instead of the power being signed by the executor *qua* executor, it is simply signed by two executors, without stating that they are executors or adding their title.

The only question so far as this branch of the plaintiffs' case is concerned is whether these differences are sufficient to take this case out of the ruling in Wod's Appeal. The master is of the opinion that they are not. The decision in Wood's Appeal was not rested upon any supposed negotiability of certificates of stocks; on the contrary, that was expressly repudiated as the ground of the decision, the court saying that the rights of a bona fide holder "do not depend upon a negotiable character in the certificates, but rest upon another principle, namely: that one who has conferred upon another by a written transfer all the *indicia* of ownership of property is estopped to assert title to it as against a third person who has in good faith purchased it for value from the apparent owner." This being the ground of the decision, it applies with the same force to a certificate of loan as to a certificate of stock.

A certificate of stock is only evidence that the holder is en-

titled to a share in the capital stock of some corporation or un-incorporated association.    A certificate of loan is merely evi-dence that the holder is entitled to have paid him the amount of money specified in the certificate.    They are both choses in action, neither negotiable; but when possession of either is given up, coupled with evidence of ownership in the holder, the real owner is estopped from claiming the same from an innocent holder who has given value for them.

The evidence of ownership in each case consists in the posses-sion of the certificate accompanied by an irrevocable power of attorney to transfer the same; such power is the natural, usual and particularly adapted method of making such transfer; so that the difference in the subject-matter, one being a certificate of loan and the other being a certificate of stock, is not a ma-terial or a substantial one.

It is argued, however, that the act of May 1, 1873, (P. L. 87) as amended by the act of May 2, 1879 (P. L. 47), makes certain formalities essential to the valid assignment of state loans, and that these formalities not having been observed in the blank as-signment and power given the Ladner Brothers by the com-plainants, the papers did not confer upon them such *indicia* of ownership as to protect the Commercial Bank, though it took the certificates bona fide and for value.

Without stopping to discuss how far the assignment and power in the present case comply with the regulations estab-lished by the acts referred to, it is sufficient for the present purpose to say that these acts relate only to the assignment of loans which have been issued in lieu of loans originally "made payable to bearer" and that the loan in question was issued under the authority of the act of April 20, 1877 (P. L. 5), which required that all certificates of loan issued thereunder should be "registered."    The present loan, therefore, does not fall with-in the class for which these acts made provision in respect to their mode of assignment.

The other difference between Wood's Appeal and this case is this: in Wood's Appeal the certificate was signed by one of the executors, and underneath the words was written, "acting ex-ecutor."    In the present case the certificate was signed by each of the two executors of Caroline Henke's will; but there is noth-ing on the face of the certificate to show that the persons sign-ing it were her executors, or that the power executed by them

in any way refers to any of the property of her estate. It is contended by the plaintiffs that the power, not purporting to be the act of the executors, is not the act of the executors, quite independent of any intent they had when it was executed.

It is not disputed that the plaintiffs intended to give and supposed they were giving to Ladner Brothers the power to deal with the certificates to the extent of having them split up into smaller amounts and put in the names of Caroline Henke's children.

It was proved by the plaintiffs themselves that neither of them in their own right owned, or had standing in their own names, any such loan. The power, therefore, must be absolutely inoperative, unless it be held to be the authority to transfer certificates of such loans as they had authority to transfer. It has always been held that the execution of a power will be sustained though neither the subject-matter nor the authority be referred to therein, if the instrument cannot be operative in any other way (see Allison v. Kurtz, 2 Watts, 185-189); and it has been expressly decided in this state (Miller v. Meetch, 8 Pa. 417) that the conveyance of land by an executor under a power is perfectly good though executed in his own name without the addition of his official title, provided his act appeared to have been intended as an execution of the power to convey. Now, in the present case, while this evidence does not appear upon the face of the instrument, it conclusively appears from the nature of the transaction, in view of the fact that the executors neither owned nor had standing in their own names any such loans.

The master, therefore, is of the opinion that the Commercial National Bank took a good title to these certificates of loan as against the true owner.

As to the second point: Having acquired a good title, did the Commercial National Bank lose that title by failure to apply the funds in its hands belonging to the Ladner Brothers to take up their indebtedness to it, due not later than July 8, 1884, for which it held these certificates as collateral?

The doctrine which the plaintiffs seek to invoke here is well recognized. It is perfectly well settled that where a creditor has the means in his hands of satisfying a debt due him and he neglects to do so, the debtor's surety is released; but the reason of this doctrine is that it is the right of the surety to have the creditor make such application of means in his hands, but before

the creditor can be held responsible for the failure to discharge his obligation to the surety, he must know the fact that there is a surety to whom he owes such obligation.

A vital defect of the contention of the plaintiffs on this part of their case is their absolute failure to prove any knowledge on the part of the Commercial Bank that the plaintiffs were the true owners of the certificates; and had they proved that fact, it would have been entirely unnecessary to resort to this doctrine in order to recover against the Commercial Bank, because such knowledge would have made the Commercial Bank a party to the illegal conversion of these certificates by the Ladner Brothers, and it could not have held them against the true owner.

It, however, was forcibly urged by the complainants that the giving of their check to the bank by Ladner Brothers was a payment of the loan, at least so far as to release the certificates of loan deposited as collaterals.

The check was not passed to the credit of Ladner Brothers but was kept in the drawer.

It appears that the bank subsequently demanded payment frequently, from the Ladner Brothers, of the loan made to them, and that they could not pay it. It also appears in the evidence that Ladner Brothers continued after July 7 to make deposits in the bank and draw on the same from time to time, and that when Ladner Brothers made an assignment some time in August they were largely indebted to the bank.

These facts establish two things:

1. As a matter of fact the bank did not appropriate funds of Ladner Brothers in its hands to the payment of the loan in question.

2. That Ladner Brothers acquiesced in the failure of the bank to make such an appropriation.

Unless, therefore, the mere giving of the check to the bank was such an irrevocable appropriation of funds of the Ladner Brothers in the hands of the bank, on July 8, to the payment of the loan of July 7, as to prevent even the parties themselves from agreeing that the transaction should be treated as though no such direction for an appropriation had been made, the loan has not been paid so as to release the collaterals.

The master is of the opinion that the giving of a check, under these circumstances, has no such magical effect as is claimed.

It raises no presumption *juris et de jure* of payment. It is nothing more than a direction by a debtor to a creditor to pay himself out of funds of the debtor in his hands; if he does not do it, there is nothing to prevent the parties agreeing to the withdrawal of such direction. The acts of the bank and Ladner Brothers in the present case are inconsistent with an intention on the part of either of them to treat the check in question as an appropriation of funds to the payment of the loan.

The master reported in favor of dismissing plaintiffs' bill, and the court overruled exceptions and entered a decree in accordance with the report.

The assignments of error specified the action of the court: (1) In dismissing the exceptions filed in behalf of complainants, and in confirming the master's report; (2) in not decreeing that the executors could not sell the estate of decedent by letter of attorney; (3) in not decreeing that the letter of attorney held by the bank passed no title to the securities in question; (4) in not decreeing that the execution of the letter of attorney was such as to put the bank on inquiry, and therefore notice; (5) in not decreeing that the securities in question should be returned to the estate of Caroline Wertheim, deceased, because the Ladners gave their check to the bank, on July 7, 1884, payable the next day, and because the Ladners on the 8th day of July, and for weeks thereafter, had large deposits with said bank, out of which the bank could and should have paid said loan; and (6) in not decreeing that under all the evidence the two certificates of state loan in question should be returned by the defendant bank, to the estate of Caroline Wertheim, deceased.

*M. J. Stulzbach* and *J. M. Moyer,* for appellants.—This is the case of an estate of a testatrix passing under her will in confidence and in trust to her executors, for the purposes named in the will, without power of substitution in the executors, who are, therefore, without power to sell the same by attorney. Story, Agency, pp. 13, 14, note; 2 Wms. Exrs. 2 p. 1011; Berger v. Duff, 4 Johns. Ch. 367; 70 Ind. 446; 14 Am. L. Rev. 47 Ga. 73; Bohlen's Estate, 75 Pa. 317; Ventress v. Smith, 10 Pet. 161, 9 L. ed. 382.

It being manifest upon the face of the letter of attorney at the time of its delivery that it was not the act and deed of the estate,

it was such defect as put the bank on inquiry, and therefore notice.   Simpson v. Stackhouse, 9 Pa. 186, 49 Am. Dec. 554; Hill v. Epley, 31 Pa. 331; Gill v. Cubitt, 3 Barn. & C. 466.

A check is intended for immediate presentation, and not for circulation; and it is the duty of the holder to present it for payment as soon as he reasonably may; and if he does not do so, he keeps it at his own risk.   Boschert v. Brown, 72 Pa. 372; Everly v. Rice, 20 Pa. 297; 8 W. N. & C. 102, 436; Com. use of Bellas v. Vanderslice, 8 Serg. & R. 452; Laubach v. Leibert, 87 Pa. 55; Holmes v. German Security Bank, 87 Pa. 525; Chase v. Petroleum Bank, 66 Pa. 169.

Where a creditor has the means of satisfaction, either actually or potentially, in his hands or within his control, and does not choose to retain it, but to relinquish it, the surety is discharged. 107 Pa. 510; 40 Pa. 140; 2 Miles, 329; 89 Pa. 126.

*John G. Johnson* and *James W. Paul,* for appellees, cited Keefer v. Schwartz, 47 Pa. 508; and Bingham's Appeal, 64 Pa. 345.

PER CURIAM:

The power of attorney attached to the certificate is in the usual form, and is executed by Ichler and Henke, who, by virtue of their power as executors of the estate of Caroline Wertheim, had the right to dispose of these certificates, and that power having thus vested in them, the mere fact that they did not designate themselves as executors when exercising it can have no significance.   It must be presumed that they were exercising some power which they possessed, and not that they were attempting to do that which they had no authority to do. It is, however, unnecessary to resort to presumption in a case where the personal estate is disposed of by executors who, by the will, were vested with the title in such estate, and who alone are responsible for its disposition.   The question, therefore, is, like that in any other sale of personal property, one of title, the source of which need not appear on the bill of sale.

The remaining questions raised by the assignments of error have been so correctly and well settled by the master, in his excellent report that we need not discuss them.

The decree is affirmed and the appeal dismissed, at costs of appellants.