GEO H. MAGNER

      VS.                                No. 7587.

FAIRCHILD MOTOR CAR CO., INC.

June 12th, 1919.

CHARLES F. CLAIBORNE, JUDGE.

This is a damage suit based on the failure of the vendor to deliver the thing sold. The plaintiff alleges that one Emile A. Rainold purchased from the defendant a new automobile, and in part payment thereof gave a number 42 Five passenger second hand Oldsmobile; that knowing the value of the automobile so given in payment by Rainold he authorized him to offer the defendant Company $500 for the same; that the defendant Company accepted the offer and advised Rainold that the car would be delivered on March 31; that on April 2 the defendant Company notified Rainold that the car had been sold and delivered to some one else and could not be delivered to him; that petitioner could not buy another second hand car of same grade and value unless he had had previous experience with it and that dealers refuse to guarantee them; that a new car of the same size and make is worth $1250, and that therefore defendant owes him $750; that he had spoken of his purchase to a number of his friends and even made engagements to take some of them out on a ride; but that the failure of the defendant to deliver the car to him had caused these friends "to joke, annoy and ridicule" him, and that he was not only "bitterly disappointed" in not receiving the car, but "was in addition likewise humiliated" to the extent of $750; wherefore he prayed for $1500 damages.

The defendant admitted the sale to Rainold; admitted failure to deliver the car to him for the reason that the car had been sold to another in ignorance of the previous sale to Rainold -; but denied that the plaintiff could not have bought another second hand car.

There was judgment for defendant and plaintiff has appealed.

Mr. Rainold testifies that, through Mr. Miller King,

522

acting for the defendant Company, he purchased of defendant a car for the price of $1250, in payment of which he gave a car he owned at a valuation of $600 and cash for the difference; King offered to sell to plaintiff the car he had given in payment, but they could not agree about the price; at the request of plaintiff he rang up the defendant and offered $500 for the car; Mr. King answered him that Mr. Hardie, the president of the Company accepted the offer; this was on Friday March 30th; on Monday, April 2d, Mr. King informed him and the plaintiff that through a mistake Mr. Hardie had sold the car to another party; Mr. Hardie told him over the phone that he was sorry, but that he had made a mistake in selling this car; Hardie added: "We all sometimes make mistakes"; witness replied to him, that that was true, but that they were both over 21 and when he made a mistake he was responsible for it and he presumed that he (Hardie) would have to be responsible for this one"; on the same day he tendered Mr. Hardie a check which was declined and also wrote him a letter; Mr. Hardie told him he would try and get the car back from the party who had purchased it; the plaintiff did not buy any other car, nor did he try to buy one through witness.

Mr. King corroborates Mr. Rainold. He adds that Mr. Hardie was in good faith in the matter, and that he tried to get other second hand cars for Mr. Magner; Mr. Hardie sent him out to see the man who had bought the car with a view of getting him to return it, but the man refused; then Mr. Hardie went to Zilbermann and got two cars second hand Oldsmobile.

The plaintiff testified that he knew Mr. Rainold's old car and had ridden in it often and no accident had happened; that Rainold had refused to take less than $600 for it; that he had business in Westwego, Jefferson Parish, and that is why he wanted a car; that he saw a car that suited him but the owner wanted $800 or $900 for it; it was second or third hand; he did not buy any other car; the whole Sugar Exchange knew about his buying this car; after the deal fell through "they all started to guy and kid him and even up to this day they still joke him right in front of everybody".

C. F. Hardie, president of defendant Company testifies

that after making the sale to Mr. Rainold Mr. King said to him one day that Mr. Rainold would like to buy his car for $500; he told him it was allright and to let him have it; some days after, one of the salesman in his store told him that he had a sale for the Oldsmobile; he asked his bookkeeper if he had a contract with Mr. Rainold, and, being answered in the negative he told the salesman to sell it; he afterwards learned the facts; he suggested to Mr. Rainold to allow him to buy another car of the same model and type; he had called on Mr. Zilbermann and told Rainold he had two cars like his old car; Mr. Rainold refused and said that he intended to teach him a lesson in regard to such transactions; he spoke to Mr. Rainold's brother and tried to prevail upon him to talk to his brother and ask him to call at their place of business with a view of making other arrangements to purchase a used car; he could have secured other *~~cars~~* *Rainold* for Mr. Rainold easily if he had been given an opportunity; ~~he~~ said he wanted this specific car and no other.

The letter addressed by Mr. Rainold to the defendant on April 2d is in the following words:

"Fairchild Motor Car Co., Inc.

Dear Sirs,

Confirming phone conversation held with your Mr. Hardie this morning, I was very much surprised to learn that you made the mistake of reselling the model 42 five passenger second hand Oldsmobile, formerly belonging to me, and which you resold to me through your agent, Mr. Miller King, on Friday March 30th for $500 which amount I now tender to you according to agreement and am ready to pay on delivery of the car. I have been ready to take and pay for the car ever since I bought it but at Mr. King's request I waited until to-day to call for the car, as he claimed it was necessary to make some repairs on same and he could not deliver the car before to-day. I now make formal demand on you for my car and if you do not deliver same at once, I beg to notify you that I will hold you responsible to fullest extent that the law allows".

On April 14th, 1917, plaintiff's attorney addressed the

following letter to the defendant:

"Fairchild Motor Car Company.

Gentlemen:

Since my conversation with your Mr. Hardy, I have seen Mr. Emile A. Rainold, and he declines to make any other proposition than the one covered in my letter of April 3d; that is, that he considers himself damaged to the extent of $1500.00. Mr. Rainold tells me that Mr. Mysing phoned him twice in your behalf, and that he told Mr. Mysing that if you would make a proposition, he would take it up with his friend to whom he had agreed to sell the car, and would see whether the matter could be adjusted. Mr. Rainold does not consider that your offer to keep him advised regarding bargains in second hand cars is worthy of serious consideration. Unless the matter can be settled amicably, I am instructed to file suit".

Yours truly,

William C. McLeod".

The theory of an action in damages is to grant compensation or indemnity to the plaintiff for the injury suffered by him resulting from an offense or from the breach of an obligation, and to restore him as much as possible to the same situation he occupied prior to the injury. The rule by which this object is attained differs with the causes which gave rise to it. Thus by his failure to perform an obligation to pay money the debtor owes interest; this fixed and immutable. C.C.,1935 (1929). When the object of the contract is anything but the payment of money, and the damages suffered from its violation are pecuniary and are susceptible of definite estimate by a pecuniary standard, then the damage consists in a pecuniary compensation for the pecuniary loss sustained or for the pecuniary loss suffered, and as to these the Courts have no discretion. These are compensatory damages. C.C.,1934 (1928). But when the injury suffered is not susceptible of pecuniary measurement of reparation and does not admit of definite ascertainment in dollars and cents as where the contract has for its object

525

some physical or intellectual enjoyment, not appreciable in money, damages are due for its breach, but are left to the discretion of the judge. C. C., 1934 (1928) § 3. These are nominal damages which are allowed only to recognize, vindicate, or determine the right violated. These damages are unknown to the Code Napoleon. There the damages, it seems, must be pecuniary. 24 Demol § 565; 2 Dalloz Codes Ann. Art. 1149 p. 1048 § 28.29.

In every contract of sale when the object sold is not unique of its kind and is not connected with any manner of sentiment, but may be duplicated upon the market, the damage sustained by the vendee resulting from the failure of the vendor to deliver consists in the loss he has sustained. That loss is the sum he would have to pay for another article of the same kind. 6 M., 553; 1 Pothier Oblig. p. 102 § 161; 24 Damol § 583; 2 Delvincourt p. 532 (4); 13 La., 225; 4 A., 24; 14 A., 45; 788; 20 A., 291; 24 A., 344; 36 A., 425; 11 La., 729; 29 A., 286; 108 La., 247; 109 La., 1023; 111 La., 394, 395; 124 La., 590; 127 La., 350; 128 La., 121; 130 La., 388 (400); 35 Cyc 615 (b), 633 (c), 640 (VII).

But plaintiff made no effort to buy another car, and refused defendant's offer to procure another for him of like make and in equal condition. His ultimatum was a new car plus $750 damages. As far as the demand for the new car is concerned, it was not justified by law. Article C. C. 1934 and the common law upon the subject merely undertake to secure a full indemnity to the disappointed purchaser, but does not contemplate giving him an opportunity to speculate to his advantage at the expense of the vendor. 6 A., 491; 4 Colo. 7. He had bought for $500 a second hand car which had seen two years service, and there was neither law nor equity in his demand for a new car costing $1250. By failing to buy a second hand car and by refusing to allow the defendant to procure one he put it out of his power to ascertain the amount of damage he had sustained. There is no contention that there were no other second hand numb er 42 five passenger Oldsmobile on the market; on the contrary, the defendant testifies that he knew of two such, and his testimony is corroborated by King.

The case of O'Meallie vs. Morean, 116 La., 1020, is distinguishable from the one under consideration. That was a case when a contract for physical enjoyment and gratification was breached and was governed by § 3 of C. C., 1934; the object of the contract was designated as the Lake Breeze Park and no other; and there was no other Park identically alike, - either on the market or elsewhere. That is not the case with an automobile which has its duplicate upon the market. Upon the same line is Lewis vs. Holmes, 109 La., 1030.

The case of Burdette vs. Steward, 107 La., 258, did not arise from a contract. It was based upon a violation of a legal right claimed by plaintiff under the Constitution and laws of the State to insepot the books of the Corporation as a stockholder thereof. It was an offense.

Inasmuch as the plaintiff's action was for the increased price of an automobile, he cannot have, in addition, an action for disappointment and vexation. We know of no decision granting such right. The failure of the defendant to deliver the machine could not be a source of humiliation to plaintiff. The fact that the plaintiff's friends "all started to guy and kid him and joke him" upon the subject caused him no pecuniary damage for which the defendant is liable.

The judgment was for the defendant and it is affirmed.

June 12th, 1919.