Alvah J. Zimmer, Appellant, *v.* The New York Central and Hudson River Railroad Company, Respondent.

Where a shipper of property enters into a contract with a common carrier, whereby in consideration of an agreement of the latter to transport the property at reduced rates, it is stipulated that in the event of loss or injury resulting from causes which would make the carrier liable, the liability shall be limited to an amount not exceeding a valuation specified, the shipper, in case of loss or injury, is not entitled to recover more than the sum specified.

It is incumbent upon a shipper to acquaint himself with the contents of the contract executed by him, and although he fails so to do he will be held chargeable with knowledge thereof.

(Argued March 8, 1893; decided March 21, 1893.)

Appeal from judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order made February 2, 1892, which affirmed upon the facts and reversed on the law, a judgment in favor of plaintiff, entered upon a verdict granting a motion for a new trial.

This action was brought to recover the value of a mare which was killed while in transit in one of defendant's cars.

The facts, so far as material, are stated in the opinion.

*C. H. Walts* for appellant. The release signed by Cooledge, does not relieve the defendant from liability for its negligence, and does not limit plaintiff's recovery to the sum of $100.

(*Maynard* v. *S. B. & N. Y. R. R. Co.*, 71 N. Y. 180; *Holsapple* v. *R., W. & O. R. R. Co.*, 86 id. 275; *Nichols* v. *N. Y. C. & H. R. R. R. Co.*, 89 id. 370; *Magin* v. *Dinsmore*, 62 id. 35; *Baldwin* v. *L. & G. W. S. S. Co.*, 74 id. 125; *Westcott* v. *Fargo*, 61 id. 554; Wheeler on Carriers, 120; 93 N. Y. 532; *Kenny* v. *N. Y. C. & H. R. R. R. Co.*, 125 id. 422; *Black* v. *G. T. Co.*, 42 Am. Rep. 713; 17 Wall. 357; 40 Am. Rep. 104; 47 id. 78; 60 Miss. 105; 4 S. W. Rep. 689; 9 Atl. Rep. 166; 100 U. S. 24; *Elliott* v. *N. Y. C. & H. R. R. R. Co.*, 33 N. Y. S. R. 861; *Jennings* v. *G. T. R. R. Co.*, 127 N. Y. 438.)

*C. D. Prescott* for respondent. The release prevents a recovery against defendant to exceed $100 and interest from the date of the death of the mare, July 31, 1890. (*Lamb* v. *C. & A. R. R. Co.*, 46 N. Y. 271; *Canfield* v. *B. & O. R. R. Co.*, 75 id. 144; 93 id. 532; *Nelson* v. *H. R. R. R. Co.*, 48 id. 498; *Shelton* v. *M. D. Co.*, 59 id. 258; *Rawson* v. *Holland*, 59 id. 611; *Belger* v. *Dinsmore*, 51 id. 170; *Steers* v. *N. Y. & P. R. R. Co.*, 57 id. 1; *Kirkland* v. *Dinsmore*, 62 id. 171; *G. Ins. Co.* v. *M. & C. R. R. Co.*, 72 id. 90; *Hill* v. *S. & B. R. R. Co.*, 73 id. 351; *Dorr* v. *N. J. S. N. Co.*, 11 id. 486; *Bissell* v. *N. Y. C. R. R. Co.*, 25 id. 442; *Cragin* v. *N. Y. C. R. R. Co.*, 51 id. 61; *Wilson* v. *N. Y. C. & H. R. R. R. Co.*, 97 id. 88; *Kenney* v. *N. Y. C. & H. R. R. R. Co.*, 125 id. 425; *Collender* v. *Dinsmore*, 55 id. 200; *Magnin* v. *Dinsmore*, 56 id. 168; *Kirkland* v. *Dinsmore*, 62 id. 171; *Steers* v. *N. Y. & P. Co.*, 57 id. 1; *G. Ins. Co.* v. *M. & C. R. R. Co.*, 72 id. 90; *Hill* v. *S. P. R. R. Co.*, 73 id. 351; *Wescott* v. *Fargo*, 61 id. 553; *Maynard* v. *S. R. R. Co.*, 71 id. 180; *Nicholas* v. *N. Y. C. & H. R. R. R. Co.*, 89 id. 370; *Holsapple* v. *R. & W. R. R. Co.*, 86 id. 275; *Kenney* v. *N. Y. C. & H. R. R. R. Co.*, 125 id. 422; *Hart* v. *P. R. R. Co.*, 112 id. 331; *Elkins* v. *E. T. Co.*, 81 Penn. St. 315.)

GRAY, J. The plaintiff owned a horse of considerable value, which he wished to send to Antwerp, N. Y. He

employed Coolidge as his agent for that purpose; who applied
to the defendant at West Albany, N. Y., for a car, in which
to effect the transportation.  A contract was filled out and
signed by Coolidge and the agent of the defendant.  It was
headed "Live Stock Contract of release and agreed valuation
according to the official classification of the New York Central
and Hudson River Railroad."  It recited that the company
transported live stock at certain prices " carrier's risk," and at
reduced prices, upon certain risks being assumed by the ship-
per, and upon the condition that the property was valued as
stated below.  The contract then read : " Now in considera-
tion that said company will transport at said reduced prices,
one horse valued at not exceeding $100  *  *  *  consigned
to G. P. Coolidge at Antwerp, N. Y., it is  *  *  *  agreed
that in the event of the loss, death or injury of the animals,
or any of them, from causes which would make the carrier
liable, such liability shall not, in any case, exceed an amount
to be fixed according to the above valuation."  A previous
clause contained an agreement that the company should not be
liable for any injuries from causes generally connected with the
bad conduct of the animals; or in consequence of heat, or other
ill effects from being crowded in cars or yards ; or on account
of burning of hay, straw, or other feeding material; nor was
the company to be liable for any loss or damage sustained by
reason of any delays, or of any insecurity of the cars.   The loss
of the horse occurred as the result of an accident.   During
the journey the engine, having been uncoupled to obtain coal
and water, in backing down to the train, became unmanageable
and crashed into the car, in which Coolidge and his horse
were ; with the result of killing the horse.   The owner
brought this action to recover its alleged value of $5,000, and
obtained a verdict for $3,100.   The judgment upon the
verdict has been reversed by the General Term, on the ground
that the contract limited the recovery to $100, and interest
thereon, and we think the reversal was correctly ordered.   In
view of the satisfactory opinion delivered at the General Term,
we do not feel called upon to enter into an elaborate discussion

of the questions raised. It is the law of this state, as settled by many decisions of this court, that a common carrier may limit his liability by contract; and the contract may provide for immunity from the negligence of the carrier, or that of its agents; but where the latter object is sought to be accomplished, the contract must be aptly expressed and in unequivocal terms. *Kenney* v. *Railroad Co.*, 125 N. Y. 425.

In this case the contract did not exempt the company from liability for the negligence, which, as we must assume, occasioned the loss of the horse. That occurred through none of the causes particularly specified in the contract, and nothing precluded the plaintiff from recovering upon the negligence proven; but the amount of his recovery was limited by the contract to the amount of $100. That the plaintiff did not know of the terms of this contract, is of no consequence. Coolidge was his agent, and will be presumed to have known and to have assented to the stipulation in the contract, which limited the general liability of the carrier. (*Belger* v. *Dinsmore*, 51 N. Y. 166; *Steers* v. *Steamship Company*, 57 id. 1.) That presumption always holds good, unless some fraud, or deception, is practiced, which was not the fact in this case. There can be no question about the reasonableness of such a contract. It was based upon the consideration of a rate of transportation, far below what it would have been, if the carrier had assumed all the risks. It was entered into with full opportunity for ascertaining its terms, and it was incumbent upon the shipper, or owner, to acquaint himself with them, and if he has not done so, he will, nevertheless, be held chargeable with their knowledge. Cases where parties, proposing to have articles of property transported by a common carrier, deliberately enter into some necessary contract relating to the transportation, differ materially from those cases of travelers who commit their trunks, or articles of baggage, to an agent of some express or transfer company, and receive at the moment some paper, which, as it has been said, amounts simply to a voucher enabling them to follow and identify their property. (*Madan* v. *Sherard*, 73 N. Y. 329.) The differ-

ence is very obvious in the circumstances, which, in the one case, usually admit of no negotiation, or discussion; while, in the other, the shipment of the property is a matter of arrangement, with full opportunity for deliberate action. In the case of *Grossman* v. *Dodd*, lately affirmed by us on the opinion of the General Term of the first department (63 Hun, 324), where a traveller, landing from a steamship, delivered her trunk to an express company's agent, and received back a printed paper, bearing the somewhat imposing title of "Domestic Bill of Lading," the opinion of Justice O'Brien, at General Term, adverts to the distinction which should control in the application of the rule of presumption to contracts for the shipment of merchandise, and to such contracts as local express companies endeavor to force upon the passenger.

The appellant's counsel argues that this clause, limiting the liability of the company, does not refer to an injury, or death, which is occasioned by its negligence as a bailee; but we think the language is far too general in the clause itself to bear him out. The agreement of the company was to transport the horse at a reduced rate, upon the condition that its value should be as stated and we would fail to give adequate effect to the agreement and its consideration, if we should hold that the company had not limited the extent of its liability in all events.

For the reasons stated, we think the judgment recovered at the Circuit was properly reversed, and, therefore, under the stipulation, judgment absolute should be entered against the appellant, with costs to the respondent.

All concur, O'Brien, J., not sitting.

Judgment accordingly.