upon the appeal taken from such order, as the order must remain in force until reversed or vacated, unless it is absolutely void for want of jurisdiction. A motion to dismiss the appeal from the judgment for failure to serve a notice of appeal within the statutory time was entertained and granted in the case of Goetz v. Met. St. Ry. Co., 54 App. Div. 367, 66 N. Y. Supp. 666; and in the case of Ziadi v. Int. St. Ry. Co., 97 App. Div. 137, 89 N. Y. Supp. 606, the court held that:

"The Special Term, after service of a notice of appeal, is without power to set aside such appeal, or to make an order that it stand."

The court further says:

"Were such procedure to obtain, it would vest in such Special Term the right to determine whether cases were or were not in this court. The uniform practice has been that the Appellate Division alone should determine what is before it."

We do not find that the foregoing has been reversed, overruled, or criticised, and we are bound by it. It seems, therefore, that the Special Term of the City Court was without jurisdiction of the subject-matter and had no power or authority to make the order referred to. The appeals must therefore be dismissed.

Appeals dismissed. Settle orders on notice.

BISCHOFF, J., concurs. MacLEAN, J., taking no part.

---

BAUM v. LONG ISLAND R. R.

(City Court of New York, Trial Term. February 4, 1908.)

1. CARRIERS—CONTRACT OF SHIPMENT—LIMITATION OF LIABILITY—VALIDITY.
   In the absence of fraud, the rights of a carrier and shipper are controlled by the contract made on receipt of the property for transportation, and a contract limiting the liability to a specified sum in case of loss is valid; but this rule does not apply to carriers of baggage, the receipt for baggage being only a voucher enabling the owner to follow and identify his property.
   [Ed. Note.—For cases in point, see Cent. Dig. vol. 9, Carriers, §§ 663–667, 1544–1549.]

2. SAME—SHIPPING RECEIPT.
   Where one shipped his trunk by express and agreed to pay a specified sum for the expressage when delivered at his residence, and there was nothing to show that he was about to become a passenger of the carrier, the shipment was one of express freight, binding him, in the absence of fraud or imposition, to the printed receipt given him limiting the carrier's liability to a specified sum.

3. SAME—DELIVERY.
   There is a distinction in the liability of a carrier in the handling of express and freight shipments. Express carriers are required to make personal delivery, and until such delivery is made they are liable as carriers, unless a reasonable excuse for nondelivery exists, while carriers of freight are exempt from the duty of personal delivery.
   [Ed. Note.—For cases in point, see Cent. Dig. vol. 9, Carriers, § 318½.]

4. SAME—"FREIGHT SHIPMENTS."
   The term "freight shipments," as commonly used, means those distinct from baggage to go by railroad carriers, and not by express car-

riers, who undertake to make delivery to the consignee personally, though their lines of travel may be identical.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 4, p. 2974.]

5. SAME—LIABILITY OF CARRIER—"EXEMPT"—"LIMIT."

Public Service Commissions Law, Laws 1907, p. 911, c. 429, § 38, providing that no contract shall "exempt" any carrier from any liability for loss to freight from the time of its delivery for transportation until received at its destination and a reasonable time shall have elapsed after notice to the consignee of the arrival to permit the removal thereof, forming a part of article 2 of the act, relating to railroads, street railroads, and carriers, when considered in connection with section 25 of the article (page 903), providing that the provisions thereof shall apply to the transportation of passengers, freight, or property, and to any carrier performing such service, refers solely to carriage of freight, as distinguished from carriage by express, and a carrier by express may limit its liability to a specified sum, and does not apply to a contract limiting liability, since the word "exempt," which means to free, to clear, to be not liable, to be not subject to, to be released from liability, is not synonymous with the word "limit," which means that which circumscribes or confines, a restriction, to apply a limit to, or to set a limit for.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 9, Carriers, §§ 663–667.

For other definitions, see Words and Phrases, vol. 3, pp. 2579, 2580; vol. 5, p. 4164.]

6. SAME.

Under Public Service Commissions Law, Laws 1907, p. 911, c. 429, § 38, providing that every carrier shall be liable for loss to property carried as baggage up to the full value thereof, provided the value in excess of $150 is stated, and a receipt is issued stating the value, and authorizing the carrier to make a reasonable charge for assuming liability in excess of $150, etc., no exemption from liability can be obtained by a carrier for baggage, no matter what the amount may be, provided the excess is stated, and the carrier must take and carry the baggage, of whatever value.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 9, Carriers, §§ 1544–1549.]

Action by Millicent Baum against the Long Island Railroad. On motion to set aside verdict for plaintiff. Conditionally granted.

David Baum, for plaintiff.

J. F. Keany (Dominie B. Griffin, of counsel), for defendant.

GREEN, J. On September 3, 1907, at Arverne, borough of Queens, New York City, the plaintiff delivered to the defendant, who is a common carrier controlling, operating, and conducting "The Long Island Express," her certain trunk, with its contents, to be carried and delivered by the defendant to her home, No. 1275 Madison avenue, borough of Manhattan, New York City. The testimony of the plaintiff was not contradicted in regard to the contents of the trunk showing apparel, etc., of the value of $1,192.88, and it was conceded by the defendant that it received the trunk as a common carrier, that it never delivered the same to the plaintiff, and that it was lost while in the custody and possession of the defendant. Among the contents of the trunk was a certain manuscript of a proposed school reader of the alleged value of $400, and which value was accepted by the jury,

as appears by its verdict. The defendant contested plaintiff's recovery upon the ground that, admitting it received the trunk and the same was not delivered to plaintiff, the trunk was delivered to the defendant under a special contract wherein its liability was limited to the sum of $50. The jury found for the plaintiff upon the trial and rendered a verdict for the full amount demanded, $1,192.88. Defendant moved to set aside the verdict upon the ground that the verdict was contrary to the law, contrary to the evidence, and that the verdict should be reduced to the sum of $50.

Counsel for the plaintiff, in opposition to the motion to set aside the verdict, assumes the position that while it is true the receipt was received by the plaintiff, and by the provisions of which the defendant limited its liability to $50, nevertheless the plaintiff is entitled to recover the full amount upon the common-law liability of the defendant, claiming that the receipt in evidence was in contravention of section 38 of the Public Service Commissions Act (chapter 429, p. 911, of the Laws of 1907) and consequently void. The plaintiff in this action is the principal of a public school, a woman of a high order of intelligence, and was sojourning with a relative at Arverne, L. I., on the 3d day of September, 1907. On that day, being desirous of sending her trunk to New York, she deposited therein considerable wearing apparel, a piece of jewelry, and also the manuscript of a book, termed by her as the second volume of a series of readers for use in the public school, the first of the series of which had been published and in use some time before. The plaintiff testified that she spent for the better part of a year about 780 hours on the manuscript, and that its reasonable value was $400. The jewelry she testified was worth $80, and the value of the balance of the articles the testimony showed amounted to $712.88, making a total of $1,192.88, for which amount the verdict was rendered. The plaintiff testified that on the day in question she sent one of the children of her sister to the express office, some slight distance from the place where she was staying, and that within a short time the defendant's agent came and took her trunk, and that he wrote out the receipt in evidence and handed it to the plaintiff personally. The testimony further shows that the place where the receipt was written, tendered, and accepted was light, and there is no suggestion in the case of any fraud on the part of the defendant's servant. The receipt was written in the presence of the plaintiff, and was produced by her on the trial, stating that "luckily she kept it" and carried it around with her. The defendant called for the receipt, and upon its production offered it in evidence. The provisions of the receipt pertinent to the issue herein involved are as follows:

"It is further agreed that the company is not to be held liable or responsible for any loss of or damage to said property or any part thereof, from any cause whatever, unless in every case the said loss or damage be proved to have occurred from the fraud or gross negligence of said company or their servants; nor in any event, whether by reason of negligence or otherwise, shall this company be held liable or responsible as carrier or bailee, nor shall any demand be made upon it beyond the sum of fifty dollars, at which sum said property is hereby valued, unless the just and true value thereof is stated herein, and an extra charge is paid or agreed to be paid therefor, based upon such higher value. * * * This company will not be liable in any event

for money or jewelry contained in packages unless specially declared and valued. * * * The party accepting this receipt hereby agrees to the conditions herein contained."

The foregoing provisions were printed upon the face of the receipt, and in addition thereto, preceding the said matter, was the following notice in large type:

"Read this receipt, which is the contract of shipment. Shippers must have the value of their packages inserted in the receipt; otherwise this company will not be responsible for an amount over $50.00."

Were the question of this receipt the only point presented upon this motion, the matter could very readily be disposed of; for it is now the well settled and established law of this state that such receipt, given under the facts as presented in this case, constituted the contract of shipment between the parties thereto, that the rights of the parties must be determined by its terms, and under it the defendant's liability is limited to $50. As has been said in the able opinion of Mr. Justice Leventritt, writing for the Appellate Term in the case of Addoms v. Weir (Sup.) 108 N. Y. Supp. 146:

"It is no longer open to question, therefore, that in the absence of fraud or imposition the rights of carrier and shipper must be controlled by whatever written contract is entered into at the time property is received for transportation."

See, also, Bernstein v. Weir, 40 Misc. Rep. 635, 83 N. Y. Supp. 48.

It may be proper to state that it is also well settled that a distinction, so far as the limitation of the liability is concerned, is made by the courts between what has been termed as "baggage" and "freight" cases. In the so-called "baggage cases," where the courts have relieved the party from the limitation contained in the receipt, it has been upon the theory that such receipts differ materially from the "freight cases," in that in the former class of cases such receipt amounts to a mere voucher or token which enables the owner to follow and identify his property, while in the latter class of cases the party shipping the goods deliberately enters into a contract necessary for its transportation. In the case of Zimmer v. N. Y. C. R. R., 137 N. Y., at page 463, 33 N. E., at page 643, the court said:

"Cases where parties proposing to have articles of property transported by a common carrier deliberately enter into some necessary contract relating to the transportation differ materially from those cases of travelers who commit their trunks or articles of baggage to an agent of some express or transfer company and receive at the moment some paper which, as it has been said, amounts simply to a voucher enabling them to follow and identify their property. Madan v. Sherard, 73 N. Y. 329, 29 Am. Rep. 153. The difference is obvious in the circumstances which in the one case usually admit of no negotiation or discussion, while in the other the shipment of the property is a matter of arrangement with full opportunity for deliberate action."

In the case at bar the plaintiff, it is true, shipped her trunk with the defendant company. The evidence shows, and plaintiff testified, that when the expressman called for the trunk he asked the plaintiff if she wanted it to go by express or by train, and that she answered that she wanted it to go by express, and that she agreed to pay 85 cents for the expressage on the trunk when it was delivered to her home in New York. The evidence is entirely barren of even a suggestion that

plaintiff was about to become a passenger of the defendant company, and I am of the opinion that the fact that she agreed to pay the express charges of 85 cents and shipped the trunk in the manner admitted takes the case at bar out of the so-called "baggage" cases and constitutes the shipment as one of express freight, and that she was bound by the terms of the printed receipt limiting the liability of the defendant to $50.

The plaintiff, however, contends that, even conceding that the manner and circumstances surrounding the shipment of the trunk takes it out of the class of "baggage" cases and constitutes the shipment as one of "freight," and thus, under the authorities that the language of the receipt would determine the rights of the parties thereunder, that the receipt is void, being in contravention of section 38, c. 429, p. 911, of the Laws of 1907, known as the "Public Service Commissions Law," and that, the receipt being void, plaintiff is entitled to recover the full amount upon the common-law liability of the defendant as a common carrier.

The public service commissions act may be found in chapter 429, p. 889, of Laws of 1907. It is entitled "an act to establish the public service commissions and prescribing their powers and duties, and to provide for the regulation and control of certain public service corporations and making an appropriation therefor." The public service commissions law consists, under the act of the Legislature, of five articles. Article 1 relates to the creation of the public service commissions, the appointment of the commissioners, their general administrative powers, and legislative definitions of the terms and language used in the act. Article 2 relates to "provisions relating to railroads, street railroads and common carriers," and articles 3, 4, and 5 may be eliminated as not germane to the subject under discussion. Section 1 of article 1 provides that the public service commissions law "shall apply to the public services herein described"; that "the term 'common carrier' when used in this act includes railroad corporations * * * express companies, freight companies * * * operating such agencies for public use in the conveyance of persons or property within this state"; and "the term 'transportation of property or freight' when used in this act includes any service in connection with the receiving, delivery, elevation, transfer in transit, ventilation, refrigeration, icing, storage and handling of the property or freight transported." By section 25 of article 2 the provisions thereof "apply to the transportation of passengers, freight or property from one point to another within the state of New York, and to any common carrier performing such service." Section 38 of the act in question, and by virtue of which plaintiff maintains the receipt in evidence is void, reads in full as follows:

"Sec. 38. Liability for Damage to Property in Transit. Every common carrier and every railroad corporation and street railroad corporation shall, upon demand, issue either a receipt or bill of lading for all property delivered to it for transportation. No contract, stipulation or clause in any receipt or bill of lading shall exempt or be held to exempt any common carrier, railroad corporation or street railroad corporation from any liability for loss, damage or injury caused by it to freight or property from the time of its delivery

for transportation until the same shall have been received at its destination and
a reasonable time shall have elapsed after notice to consignee of such arrival
to permit of the removal of such freight or property. Every common carrier,
railroad corporation and street railroad corporation shall be liable for all
loss, damage or injury to property caused by delay in transit due to negli-
gence while the same is being carried by it, but in any action to recover for
damages sustained by delay in transit the burden of proof shall be upon the
defendant to show that such delay was not due to negligence. Every com-
mon carrier and railroad corporation shall be liable for loss, damage and in-
jury to property carried as baggage up to the full value and regardless of the
character thereof, but the value in excess of one hundred and fifty dollars
shall be stated upon delivery to the carrier, and a written receipt stating the
value shall be issued by the carrier, who may make a reasonable charge for
the assumption of such liability in excess of one hundred and fifty dollars and
for the carriage of baggage exceeding one hundred and fifty pounds in weight
upon a single ticket. Nothing in this section shall deprive any holder of such
receipt or bill of lading of any remedy or right of action which he has under
existing law."

While article 2 of the public service commissions law is to be con-
sidered by reason of its enactment as part of that law, it may, never-
theless, by reason of its provisions, be read as virtually an independ-
ent statute providing for the regulation and control of certain pub-
lic service corporations, and, while it is radical in its provisions and
drastic in its operation, it is nevertheless clear in its language and in-
tendment. The enactment of this article marks an epoch in the his-
tory of railroad regulation and control in this state, for in it the state
has seen fit to embody in collated and concrete form a law regulating
the conduct of common carriers and other public service corporations.
By the provisions of this article of the law much of the abuse claimed
to have existed before its enactment has been regulated and placed
under control. By its provisions there must be adequate service and
just and reasonable charges, there must be no unjust discrimination.
nor unreasonable preference, there must be no false billing by carrier
or shipper in order to obtain discrimination, and among the other pro-
visions of the article is the one pertinent to the question at bar, as con-
tained in section 38 of article 2 and entitled "Liability for Damage to
Property in Transit," hereinbefore set forth.

A casual reading of section 38 at first blush causes the impression
that startling innovations to the settled law of common carriers have
been inaugurated by the statute, but a careful examination convinces
me that such is not the fact, nor can the statute be thus interpreted.
The section, for convenience of construction, may be divided into four
parts. The first part, to wit, "Every common carrier  *  *  *  shall
upon demand, issue a receipt  *  *  *  for all property delivered to
it for transportation," needs no further comment than a statement of
its phraseology to make clear its purpose. The second part, to wit:

"No contract, stipulation or clause in any receipt  *  *  *  shall exempt
or be held to exempt any common carrier from any liability for loss, damage
or injury caused by it to freight or property from the time of its delivery
for transportation until the same shall have been received at its destination
and a reasonable time shall have elapsed after notice to consignee of such ar-
rival to permit of the removal of such freight or property."

A careful examination of this language establishes conclusively that
this portion of the section, which I have designated as the second part,

refers solely and conclusively to the carriage of "freight" and has no relation to the carriage of goods by express. "There is a well-recognized distinction in the liability of a carrier in the handling of baggage and express shipments. There is also a well-recognized distinction in the liability of a carrier in the handling of so-called express and freight shipments, having as its most important feature the manner in which the carrier is bound to make delivery. Express carriers are bound to make delivery to the consignee personally." See sections 379 to 383, Hutchinson on Carriers (2d Ed.); Mechem. "Express companies are required to make personal delivery of the goods intrusted to them for carriage, and until delivered to the consignee. Unless a reasonable excuse for nondelivery exists the company's liability as a common carrier continues" (citing Witbeck v. Holland, 45 N. Y. 13, 6 Am. Rep. 23. See section 565, Van Zile on Bailments and Carriers; Haslam v. Adams Exp. Co., 19 N. Y. Super. Ct. 235). The term "freight shipments," as it is commonly used, means those distinct from baggage to go by railroad carriers, and not by express carriers, who undertake "to make delivery to the consignee personally, although their lines of travel might be identical." See section 379, Hutchinson on Carriers. "Carriers by * * * railways are exempt from the duty of personal delivery. Redfield on Railways, § 127: Thomas v. Boston R. R., 10 Metc. (Mass.) 472, 43 Am. Dec. 444." See Witbeck v. Holland, supra. The defendant's counsel well says:

"The duty of the defendant as an express carrier, therefore, being to make delivery to the consignee personally, this section cannot be held to apply to express or baggage cases, as the only evident intent of the act quoted from is to restrict the carrier from exempting itself from liability 'from the time of its [property] delivery for transportation until the same shall have been received at its destination and a reasonable time shall have elapsed after notice to consignee of such arrival to permit of the removal of such * * * property.'"

This period of time never could have existed, as the defendant would have had no right to hold the plaintiff's trunk at its destination and give notice to the consignee of its arrival "to permit of the removal of such property," and to wait a reasonable time elapsing after such notice, because the duty of an express carrier is to make personal delivery. The meaning of the language of the second part is therefore plain, and its meaning may be said to be that from the time of delivery of freight for transportation until it has been received at its destination, notice of its arrival given, and a reasonable time allowed for its removal by the consignee, a common carrier may not exempt itself from liability; but after such period has elapsed there is nothing in the statute preventing such exemption from and after such time. There is nothing radical in this portion of the statute, nor can I see anything in it other than a statutory declaration of the common law; for after the arrival of the freight and notice to the consignee, and a reasonable appointment given to remove the same, the carrier would only be liable as a warehouseman, and would be permitted at such period to stipulate for exemption of liability.

The third part of the section provides that every common carrier shall be liable for loss, damage, or injury to property caused by delay

in transit due to negligence, and the burden of proof is placed upon the defendant to show that the delay was not due to negligence. The fourth part of the section provides that every common carrier shall be liable for loss, damage, or injury to property carried as baggage up to the full value and regardless of the character thereof, but that the value in excess of $150 must be stated, and a receipt shall be issued stating the value, and the carrier may make a reasonable charge for assuming the liability in excess of $150, and also for carrying baggage in excess of 150 pounds in weight. By this provision no exemption from liability can be obtained by the carrier for baggage, no matter what the amount may be, provided the excess be stated, and the carrier must take and carry the baggage, be the value what it may.

I have given considerable time to the examination of the question of the application of section 38 to the case at bar by reason of the sincerity and earnestness with which plaintiff's counsel has urged its relation to the case at bar; but after such examination I fail to see in what manner that section is applicable to the case before the court. Plaintiff's counsel has contended that the case falls within that provision of section 38 which I have designated as the second part thereof, and his contention is that under and by virtue of that section the defendant cannot limit its liability to the sum of $50, because section 38 provides that a common carrier cannot exempt itself from liability. His claim is substantially that the word "exempt" is synonymous with the word "limit," or, to be more accurate, that "exempt," includes the word "limit," and consequently the receipt is void. With this contention I cannot agree. Webster defines "exempt" to mean: To free; to clear; to be not liable to; to be not subject to; to be free; to be released from some liability which others are subject to; to grant immunity to; to free from obligation; to release. While "limit" is defined to be: That which circumscribes or confines; a restriction; to apply a limit to; or to set a limit for; to restrict; to terminate, circumscribe or restrict. To be "exempt" implies an absolute release from, while to "limit" implies a restriction as to amount or a restricting within certain bounds.

The distinction between an exemption from all liability and a limitation as to the amount of liability based upon the statement of the value of the article shipped has been the subject of judicial observation and has been passed upon in the cases of Railroad Co. v. Lockwood, 17 Wall. (U. S.) 357, 21 L. Ed. 627, and Hart v. Penn. R. R., 112 U. S. 331, 5 Sup. Ct. 151, 28 L. Ed. 717. In the Lockwood Case it was held that "a common carrier cannot lawfully stipulate for exemption from responsibility when such exemption is not just or reasonable in the eye of the law," and in the same case Mr. Justice Bradley, writing for the court says:

"But since the decision in the case of National Co. v. Merchants' Bank (by this court in January term, 1848) 6 How. (U. S.) 344, 12 L. Ed. 465, it has been uniformly held, as well in the courts of New York as in the federal courts, that a common carrier may by special contract limit his common-law liability, although considerable diversity of opinion has existed as to the extent to which such limitation is admissible."

In the Hart Case, supra, it was held, Mr. Justice Blatchford writing for the court, that:

"Where a contract of carriage signed by the shipper is fairly made with a railroad company, agreeing on a valuation of the property carried, with the rate of freight based on the condition that the carrier assumes liability only to the extent of the agreed valuation, even in case of loss or damage by the negligence of the carrier, the contract will be upheld as a proper and lawful mode of securing a due proportion between the amount for which the carrier may be responsible and the freight he receives, and of protecting himself against extravagant and fanciful valuations."

The court further said:

"It is the law of this court that a common carrier may by special contract limit its common-law liability, but that he cannot stipulate for exemption from the consequences of his own negligence or that of his servants. The limitation of value has no tendency to exempt from liability for negligence. It does not induce want of care. It exacts from the carrier the measure of care due to the value agreed on. The carrier is bound to respond in that value for negligence. The compensation for carriage is based on that value. The shipper is estopped from saying that the value is grata."

Where a plaintiff fails to disclose the true value of the article shipped, for the purpose of obtaining a concession in the rate charged, a fraud in law is committed upon the carrier, and the carrier is not liable beyond the agreed value set forth in the contract of carriage. Hart Case, supra; Magnin v. Dinsmore, 62 N. Y. 40, 20 Am. Rep. 442; Toy v. L. I. R. R. (Sup.) 56 N. Y. Supp. 183; Barnes v. L. I. R. R. (Sup.) 100 N. Y. Supp. 595; Bates v. Weir (Sup.) 105 N. Y. Supp. 788; Rosenthal v. Weir, 170 N. Y. 154, 63 N. E. 65, 57 L. R. A. 527; Rathbone v. N. Y. C. R. R., 140 N. Y. 48, 35 N. E. 418; Bermel v. N. Y., N. H. & H. R. R., 62 App. Div. 393, 70 N. Y. Supp. 804.

After examining, therefore, section 38 of the public service commissions act, I am forced to the conclusion that it has no application to the case at bar; that which I have designated as the second part applies to freight shipments only, and the trunk in question was sent by express to be delivered personally to the plaintiff at her residence in this city; that the fourth part of the section applies to the shipment or carriage of baggage, where the property is carried as baggage, and not to a case like the one under discussion, where the property in question was the subject of shipment by express upon a contract entered into with full opportunity for examination and deliberation; and there is nothing in the law or in section 38 preventing the making of such a contract. The receipt in evidence contains the provisions that the defendant shall not be held liable for any reason as carrier or bailee beyond the sum of $50, at which sum the property is hereby valued, unless the true and just value thereof is stated herein and an extra charge paid or agreed to be paid thereon, based upon such higher value. There was no value given, the receipt was accepted, and after a careful consideration of all the facts and the law applicable to this case, I am of the opinion that the contract herein limiting the liability to $50 is perfectly good and valid.

Having arrived at this conclusion, the motion to set aside the verdict is granted, unless the plaintiff stipulate within 10 days to reduce the verdict to the sum of $50, in which event the motion will be denied.

Plaintiff may have an exception to the granting of the motion reducing the verdict, and also to the order granting the new trial in case plaintiff fails to stipulate.