TRIWAY COMPANY, Plaintiff, *v.* RUTH TEPER, Doing Business under the Name of RESSUS SPORTING GOODS Co., Defendant.

City Court of Albany, April 5, 1949.

*Arthur J. Harvey* and *John Ford* for plaintiff.

*John E. Kelly* for defendant.

HERZOG, J. The plaintiff received an order from the defendant on or about November 7, 1946, for one gross of aluminum toy trucks. The order was on a printed form of the defendant and stated: " Ship Via: Freight Ship When: AT ONCE." The trucks were shipped on November 18, 1946, by Pacific Intermountain Express, which is a motor carrier. The defendant had not received them by December 2d, so on that date he sent a card, air mail, canceling the order. Plaintiff then attempted to trace the articles and found that there had been a truck drivers' strike and that embargoes had been placed on deliveries to eastern States by motor carrier. The strike was lifted December 2d and deliveries resumed.

Defendant's employee testified that on or about December 20th, an attempt was made by a truckman to deliver the aluminum trucks to him. He refused to accept the toys on the ground that they were purchased for Christmas sale by himself and his distributors and that delivery on December 20th was too late to enable him to resell them. The trucks were not marked especially for Christmas but defendant's testimony is that they were purchased for the season, which I believe is the truth. Therefore, since the goods did not arrive for almost a month and a half from the time ordered, he had a right to cancel the order, unless the risk was his. The question then remains as to which party must bear the risk of delay in delivery caused by the truck drivers' strike here.

No citation of either authority or statute is necessary to sustain the well-established rule that delivery to a carrier ordinarily, in a sale such as this, passes the property and the risk becomes the buyer's. However, there are exceptions to this rule.

" For the same reason the property will not pass if the goods are too many, or too few, or if they are sent at a materially different time, or by a different route or *method of shipment,* or under a different kind of bill of lading, or are misdirected." (Italics mine.) (2 Williston on Sales [Rev. ed.], § 278a, p. 80. See, also, *Hills* v. *Lynch,* 3 Robt. 42; *Ohio Confection Co.* v. *Eimon Mercantile Co.,* 154 Minn. 420, Note, 31 A. L. R. 955.) Following this rule, the property in the trucks passed to the defendant if they were shipped according to his directions and he took the risk of delay, since there was no clause exempting either party from liability for strikes, etc., — if shipped otherwise than according to his directions, the property remained in the plaintiff and the risk was his.

We are thus brought to the question of what is meant by, " Ship Via: Freight ". The word, " Freight " is a general term and has been defined in three different ways. It is derived from the Saxon " fracht " and from this it may mean the compensation paid for the transportation of goods by sea, carriage or land. (*The Main* v. *Williams*, 152 U. S. 122; *Michael* v. *Prussian Nat. Ins. Co.*, 171 N. Y. 25, 34.) Black's Law Dictionary defines it as: " Freight is properly the price or compensation paid for the transportation of goods by a carrier, at sea, from port to port. But the term is also used to denote the hire paid for the carriage of goods on land from place to place, (usually by a railroad company, but not an express company,) or on inland streams or lakes. The name is also applied to the goods or merchandise transported by any of the above means."

In addition, it is used to mean the article itself or the property or commodity which is carried by land. " The word ' Freight ' has been used from the earliest times to mean the property or commodity which is carried, whether it was that which was carried in times past in Conestoga wagons drawn by ox teams across the plains, or whether it was carried upon canal boats, or is carried today by aeroplane, or by truck, as well as by rail." (*Lyman-Richey Sand & Gravel Co.* v. *State of Nebraska*, 123 Neb. 674, 679, Note, 83 A. L. R. 1306; *People* v. *Ackert*, 187 Misc. 67; 17 Words and Phrases Perm. ed.)

There is also a third meaning, as the word, "Freight " has also been used to signify the actual transportation from one place to another. (37 C. J. S., p. 1376; *Ex Parte Lockhart*, 350 Mo. 1220.)

Which of the above meanings is meant in each case must depend upon the manner in which the parties to the contract intended to use the term, the circumstances of each use, and the context of the particular contract. In my opinion the meaning intended here was the last one defined above — the method of transportation. The plaintiff interpreted this as meaning by any means of transportation, as there was testimony to the effect that they ascertained the fastest method before making the shipment. The defendant says he meant transportation by rail. The contract should be construed most strongly against him in case of ambiguity. There is no doubt in my mind but that "Freight " can mean the actual commodity transported by rail, boat, truck, air or other means of conveyance. However, when a buyer uses this term to describe a means of transportation, I think that shipment only by rail is intended and that the seller must so construe it. There is a difference in express and

truck shipment, as in the former, delivery is made to the door, and in the latter, shipments are made to a depot or terminal. There is also a difference in rates and it seems to me that the well-accepted meaning of " Freight " as a method of shipment is shipment by rail. (*Baum* v. *Long Island R. R. Co.*, 58 Misc. 34, 41, 42.) Thus, where the plaintiff here undertook, eleven days after receipt of the order, to ship by truck, contrary to the defendant's direction, he incurred the risk of delay or loss. The complaint is, therefore, dismissed.