HANNAH SPRINGER, Respondent, *v.* ROBERT E. WESTCOTT, as
President of the WESTCOTT EXPRESS COMPANY, Appellant.

1. CARRIERS — BAGGAGE EXPRESS COMPANY — LIABILITY FOR LOSS OF
BAGGAGE — PREMATURE SURRENDER OF CHECK.   A baggage express
company which undertakes, upon receiving a railroad passenger's check,
to present it at the depot to which her trunk is checked, to demand the
delivery of the trunk from the railroad company, and if not delivered to
return the check, is liable to the owner for the value of articles stolen from
the trunk where she delivered her check to a soliciting agent of the express
company on the train, who, in accordance with a custom known to his com-
pany, surrendered it to the railroad company while the trunk was in the
baggage car, and before it had reached the baggage room at the place of
destination, by placing it upon the strap containing the duplicate check
attached to the trunk, and who then pasted upon the trunk the label
of the express company entitling it to remove the trunk from the bag-
gage room; but before this was done the trunk was purloined, and sub-
sequently found rifled of its contents and delivered to the owner by
the express company in that condition, since, by the premature sur-
render of the check, as between the two companies, the railroad company
became the bailee of the trunk for, and its possession became that of the
express company, and the latter, having assumed control, was bound to
make safe delivery of the trunk and its contents to the owner.

2. TRIAL — REQUESTED INSTRUCTIONS COVERED BY CHARGE PROPERLY
REFUSED.   In an action by the owner against the express company for
breach of its contract to deliver the trunk and its contents, requests
for further instructions upon the questions whether the plaintiff knew
that a paper delivered to her by the defendant's agent contained condi-
tions relating to the terms of the contract, and whether it did what was
reasonably sufficient to give the plaintiff notice of such conditions, are
properly refused, where the court, after reading the contents of the paper
to the jury. charged that if the plaintiff knew the character of the
paper or accepted it with notice of its contents, or with notice that it con-
tained the terms of a special contract, she could not recover in excess of
the amount stipulated therein, but that if she did not know that the paper
proffered was a contract and received it not knowing its contents, and was
satisfied it was given her simply to enable her to trace her property, or as
a mere receipt, she could recover the value of the goods lost.

*Springer* v. *Westcott*, 19 App. Div. 366, affirmed.

(Argued January 14, 1901; decided February 26, 1901.)

APPEAL from a judgment of the Appellate Division of the
Supreme Court in the first judicial department, entered July
22, 1897, affirming a judgment in favor of plaintiff entered
upon a verdict.

This action was brought to recover damages from the defendant, an unincorporated baggage express company, for breach of its contract to deliver a trunk and contents to the plaintiff. The answer was in substance a general denial.

On Saturday, Sepember 14th, 1889, the plaintiff delivered her trunk to the New York Central & Hudson River Railroad Company at Troy and caused it to be checked from that place to the city of New York. The trunk was then in good order and filled with ladies' clothing, jewelry, etc. The plaintiff took passage upon the same train that carried her trunk, which arrived at the city of New York in the evening between 8 and 9 o'clock. On the way, after dark, at a point " nearer New York than Poughkeepsie," a messenger of the defendant came through the train soliciting baggage. The plaintiff gave him her check, paid him 40 cents and told him to send her trunk to No. 222 East 71st street. He gave her a paper, with some printing on it, such as she had received on similar occasions before, but which she did not read and she never knew what they contained. It was " folded up," and she put it in her pocket without trying to read it. He did not tell her, and she did not know, what its contents were. In fact it was a receipt purporting to limit the company's liability for the trunk and contents " by reason of negligence or otherwise" to an amount not exceeding $100. The check was never returned to the plaintiff, but, without any explanation, the trunk was delivered by the defendant at No. 222 East 71st street about noon on Tuesday, September 17th. It then had a yellow label of the defendant pasted upon it, but was covered with dirt, the lock was broken, the straps were hanging out, some of the compartments and all of the contents were gone, except a hat frame from which the lace had been stripped.

One Green, called by the plaintiff, testified that for thirty years he was employed by the defendant to solicit checks for baggage on the trains of said railroad between Troy and New York. While he could not recollect that he took the plaintiff's order, he recognized his receipt and stated that his usual course of business on such occasions was to take the checks

received from passengers, go into the baggage car and "double" the checks upon the trunks found there. By "doubling" he continued, "is meant putting the check I receive from the passenger on the strap which is attached to the trunk, which contains a duplicate check. And if I find a trunk I tab it. By 'tabbing' is meant putting a Westcott Express label, yellow, on the trunk to correspond with the check number." He did not know what became of the check received from the plaintiff.

Evidence was given in behalf of the defendant tending to show that said trunk was stolen from the baggage room of the Grand Central Depot and that it was returned to that place, with the yellow label of the defendant upon it, at about ten o'clock on Monday night, September 16th, by an agent of another express company, who said that he had found it; that in the ordinary course of business "the man in charge of the baggage, an. employee of the railroad company, stripped it as it was delivered to the express company, stripped the trunk of checks before" the agents of the latter could take it away; that trunks are sometimes stripped by the railroad company when baggage is delivered at the car, and sometimes an hour or two later; that after they are stripped they remain in the baggage room of the Grand Central Depot subject to defendant's order until one of its agents takes them away; that they then have no checks upon them, but have defendant's yellow label, which enables its drivers to go to any part of the baggage room and get the trunks thus labeled; that no effort was made by the express company to search for the plaintiff's check among those of the railroad company.

At the close of the evidence, the defendant moved that a verdict be directed in its favor upon the ground, among others, that the plaintiff had failed to prove the cause of action set forth in the complaint, or to show that the missing goods were in the trunk when the defendant received it from the baggage room of the railroad company. The jury rendered a verdict in favor of the plaintiff for $900, and the judgment entered accordingly was affirmed by the Appellate Division,

one of the justices dissenting.   The result of appeals to the
Supreme Court in this case appears in 78 Hun, 365 ; 87 Hun,
190 ; 2 App. Div. 295, and 19 App. Div. 366.

*Austen G. Fox* and *E. Luther Hamilton* for appellant.
The court erred in refusing to direct a verdict in favor of the
defendant. (*Aiken* v. *Westcott,* 14 Daly, 504 ; 123 N. Y.
363 ; *Canfield* v. *B. & O. R. R. Co.,* 75 N. Y. 144 ; *Patti-
son* v. *Syracuse Nat. Bank,* 80 N. Y. 98 ; *Ontario Bank* v.
*N. J. S. Co.,* 59 N. Y. 510 ; *Kay* v. *Met. St. Ry. Co.,* 163
N. Y. 447 ; *Whitlatch* v. *F. & C. Co.,* 149 N. Y. 45 ;
*Farmers' L. & T. Co.* v. *Siefke,* 144 N. Y. 354 ; *Claflin* v.
*Meyer,* 75 N. Y. 260 ; *Weigley* v. *Kneeland,* 18 App. Div.
47.)   The trial court erred in refusing to submit to the jury
the questions whether the plaintiff knew that the writing or
printing on the bill of lading contained conditions relating to
the terms of the contract, and whether the defendant did what
was reasonably sufficient to give the plaintiff notice of such
conditions. (*Harris* v. *G. W. Ry. Co.,* L. R. [1 Q. B. D.]
515 ; *Parker* v. *S. E. Ry. Co.,* L. R. [2 C. P. D.] 416 ; *Rich-
ardson* v. *Rountree,* L. R. [App. Cas. 1894] 217.)   The court
erred in refusing to charge that the plaintiff was not entitled
to interest. (*Sloan* v. *Baird,* 162 N. Y. 327.)

*B. F. Einstein* for respondent.

VANN, J.   The contract between the railroad company and
the plaintiff was that it would transport her baggage from
Troy to its depot in the city of New York, and upon presen-
tation of her check at that place, to there deliver the trunk to
her or her agent making demand therefor.

The contract between the express company and the plain-
tiff was that it would present her check to the railroad com-
pany at its depot in New York city, demand her trunk at that
place, and upon receipt thereof transport it to No. 222 East
71st street, and there leave it ; but if the railroad company
should fail to deliver the trunk, that it would return the check
to her, with a suitable explanation.

The express company did not perform its contract according to the terms thereof, but for its own convenience parted with the custody of the check before the railroad company had transported the trunk to its place of destination. In so doing it acted through Mr. Green, whose methods of doing its business had continued for so long a time that the law presumes they were known to and approved by it. Whatever Mr. Green did, therefore, in transacting the business he was employed to do, in his customary way, the express company itself did.

After receiving the check from the plaintiff, Green, according to his usual method, went forward to the baggage car of the railroad company, where, with its approval as must be presumed from the established course of business, he placed the plaintiff's check upon the strap containing the duplicate check attached to her trunk, upon which he pasted the label of the defendant. The evidence warranted the inference that at this time the contents of the trunk had not been disturbed. These acts, as the jury could have found, constituted a surrender of the check to the railroad company. Green no longer had it in his possession, for he had voluntarily put it on the strap where it belonged, which was in the possession of the railroad company, and where it was always placed upon surrender. The express company paid no further attention to the check, but depended upon its label to identify the trunk. It thereby parted with control of the check, and had no power to resume possession without consent of the railroad company, which is presumed to have accepted the surrender, because it was its custom to retain possession of both trunk and check until they reached its baggage room in the Grand Central Depot, where it took off and kept the strap containing the check and held the trunk subject to the order of the express company. Such checks were not returned to the express company, but were retained by the railroad company as evidence that its contract with the owner of the baggage had been performed. While it was the duty of the defendant to deliver the trunk with the contents intact or return the check, it did

16

neither, but gave up the check at a time and place not permitted by the contract, and after a delay of nearly three days delivered the trunk rifled of its contents. The facts speak for themselves and do not require elaborate argument.

What was the legal effect of the premature surrender of the check under the circumstances stated?

Whether the effect upon the liability of the railroad company to the plaintiff was to terminate it, as a carrier, convert it into that of a warehouseman, or to end it entirely, we do not determine, but confine our attention to the effect upon the liability of the express company to the plaintiff. As between the two companies, the railroad company became the bailee of the trunk for the express company. Thenceforth there was a dual custody, by the latter as bailor and by the former as bailee, the same as always results from the storage of property of a principal by a bailee thereof, whether authorized by the owner or not. The possession of the railroad company thus became the possession of the express company. So far as the rights of the plaintiff are concerned, the defendant had assumed control of the trunk and was bound to make safe delivery thereof to her. By its action it ran the risk of receiving the trunk, with the contents unharmed, from the railroad company, its bailee. While it was under no obligation to take any responsibility for the trunk until the actual delivery thereof, upon surrender of the check at the Grand Central Depot, it saw fit, for purposes of its own, to anticipate responsibility by giving up the check while the trunk was *in transitu.* It cannot now be heard to say that it did not intend this result, for the law holds it to the natural consequences of its own acts. The plaintiff was entitled to her check, unaffected by the unauthorized surrender, as unimpaired evidence of an unperformed contract of the railroad company, or the delivery of her trunk with the contents undisturbed. She cannot be tossed like a ball from one company to the other, each disclaiming liability itself and seeking to place it upon the other. One at least was liable, and from their intimate relations they could easily have determined which, without

subjecting a patron of both to the expense and delay of litigation which has lasted more than ten years.

We think the defendant is liable for the loss of the articles stolen from the trunk, and this conclusion makes it unnecessary to consider the numerous requests to charge, based upon a different theory of liability from the one which we have laid down.

The defendant claims that the trial court erred in refusing to submit to the jury the questions whether the plaintiff knew that the writing or printing on the paper delivered to her by the messenger contained conditions relating to the terms of the contract, and whether the defendant did what was reasonably sufficient to give the plaintiff notice of such conditions.

Upon this subject the trial judge, after reading the contents of the paper to the jury, charged as follows : " The defendant claims that the plaintiff knew the contents of the paper, because she had on previous occasions, while traveling on said railroad, had her baggage sent by the defendant's agent, and had received from him a receipt with some printing on it and of the same kind as the one in question. If you find from the entire evidence, and under the instructions of the court, that the plaintiff knew the character of the paper so received by her from the defendant's agent, or accepted it with notice of its contents, or with notice that it contained the terms of a special contract, so as to make her acquaint herself with its contents, and neglected to do so, the limitation of $100 applies, and in that event, even though you may find the plaintiff is entitled to your verdict, she cannot recover more than such sum. If, however, you find from all the circumstances that the plaintiff did not know the paper writing in question was proffered as a contract, and received it not knowing its contents and satisfied it was given her simply to enable her to trace her property, or a mere receipt, then the plaintiff is not bound by its limitation, and you may, if you find she is entitled to recover, render a verdict in her favor for the value of the goods which you find were lost."

We think this was all that the defendant could require, and

that its requests for further instructions upon the subject were properly refused. (*Madan* v. *Sherard*, 73 N. Y. 329; *Grossman* v. *Dodd*, 63 Hun, 324; affirmed, 137 N. Y. 599; *Zimmer* v. *N. Y. C. & H. R. R. R. Co.*, 137 N. Y. 464.)

The court was also requested to charge that, "even if the jury find a verdict for the plaintiff, she is not entitled to interest;" but, as no exception was taken to the refusal, no question is presented for consideration.

After examining all the exceptions, we find none calling for a reversal, and the judgment appealed from should, therefore, be affirmed, with costs.

PARKER, Ch. J., HAIGHT, MARTIN, LANDON and CULLEN, JJ., concur; BARTLETT, J., not sitting.

Judgment affirmed.