In the matter of the interdiction of Jabez Bunting Watkins. Application by Grant Mutersbaugh for prohibition and certiorari Denied.

J. W. Baker, Morris Reese Stewart, and Miller, Dufour & Dufour, for relator. McCoy & Moss and Robert L. Knox, for respondent.

PROVOSTY, J. The relator filed a petition for the interdiction of his uncle, and applied to be appointed his curator. The judgment ordered a family meeting to be held, and, same having been held, the relator opposed the homologation of the proceedings and recused the judge. The judge referred the recusation to a judge ad hoc, and the latter overruled same. The relator moved for a suspensive appeal, and, same having been denied, applied to this court for a mandamus, and at the same time filed the present application for prohibition and certiorari as ancillary to the mandamus proceeding. The mandamus having been refused by a decree this day handed down, (41 South. 242),[1] the present application must also be denied.

Application denied.

---

[1] Ante, p. 1017.

(41 South. 243.)

No. 15,998.

O'MEALLIE et al. v. MOREAU.

(May 7, 1906. Rehearing Denied May 21, 1906.)

1. DAMAGES — BREACH OF CONTRACT — VEXATION—ELEMENT OF DAMAGES.

When plaintiffs and their guests, 100 in all, got off of the train at Milneburg, they found that the Lake Breeze Park, which they had engaged from defendant for their picnic, was occupied by another picnicking party. Defendant tendered them another, but less eligible, place, which they refused to take. For their disappointment, annoyance, vexation, and mortification, they are allowed $75 damages.

[Ed. Note.—For cases in point, see vol. 15, Cent. Dig. Damages, § 100.]

2. DAMAGES—BREACH OF CONTRACT.

Though a breach of contract has happened through an honest mistake, yet the actual damages caused by it must be allowed.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; Fred Durieve King, Judge.

Action by Harry O'Meallie and others against Charles Moreau. Judgment for defendant, and plaintiffs appeal. Reversed, and judgment ordered for plaintiffs.

Louis R. Hoover and Edward Alexander Parsons, for appellants. Charles Joseph Théard, for appellee.

PROVOSTY, J. The plaintiffs, 20 in number, compose a loosely organized social club called the "Rounders," whose purpose is to give entertainments, balls, picnics, etc. For giving one of their picnics the plaintiffs engaged, three weeks in advance, the pavillion of defendant, known as "Lake Breeze Park," at Milneburg. Some days later, hearing that the place had been engaged for the same day by another similar, and to some extent rival, club, known as the "Leading Six," plaintiffs sent a committee to defendant to find out what truth there was in the report, and were assured by defendant that they need have no fear, that the place was reserved for them. Still later they discov-

,ered that the Leading Six were issuing tickets .for a picnic at the same time and place as theirs, and again they sent a committee to ,defendant, and were again and positively assured that the place was not engaged to the Leading Six, and that the Rounders could .depend upon having it.

Early on the morning of the day of the ·picnic two of the plaintiffs drove out to Milneburg with the eatables, in order to pre- ,pare everything in advance. They were in- formed by defendant that a mistake had been ·made, that the Lake Breeze Park had already been engaged to the Leading Six when the Rounders had applied for it, and that the Leading Six were in possession; but that the Rounders could have Kranz's Hall, which had been secured for them, and which ·was just as good. The two precursors went ·and inspected Kranz's Hall, and were not satisfied with it. They found that it was four blocks from the railroad station, and that the access to it was by a pathway grown up in weeds and somewhat mud- ·dy. Not knowing what to do, they awaited the arrival of the train on which the other ·members of the club and their guests, in all ·about 100, were to come.

When the latter arrived, their disappoint- ment, as might be expected, was great. ·There was a deliberation as to what to do; ·and it was decided not to take Kranz's Hall. Some of the members said they had attended a picnic there on a previous occasion when ·it had rained, and the water had invaded the floor. This consideration, it would seem, ·weighed all the more because the day was ·threatening. Finally, after about an hour and a half of indecision, they concluded to take a place known as O'Mallon's, and there ·they had their picnic.

Defendant admits the breach of contract; ·but pleads that it was through an honest mis- take, and that he minimized to nothing the ,consequences of his mistake, since he tend-

ered to the plaintiffs Kranz's Hall, which was just as good a place. He deposited in court the money which plaintiffs had paid him, being $4, one-half of the rental of the place, paid in advance, and deposited also the amount of the costs incurred up to the moment of the filing of the answer.

Five of the plaintiffs testified. They evi- dently sought to magnify the disappointment caused to the club and its guests at being shut out from the pleasant Lake Breeze Park and having to put up with O'Mallon's, and, the annoyance and mortification of themselves and associates of the club at the contretemps. "Even now," they say, "when our friends meet us they twit us about our picnic, and ask us when we are going to give another." But, after every allowance and deduction is made, the fact remains that, despite their extraordinary precautions, they and their guests were sorely disappointed, and that they, as hosts, were subjected to some annoy- ance and mortification, and that their and their friends' day's pleasure was to some ex- tent marred.

Defendant offered no evidence except his own testimony, which is to the effect that the mistake was an honest one, and that Kranz's Hall is just as good as Lake Breeze Park.

In the lower court the plaintiffs were given not even the traditional one cent damages. They were given judgment for their $4, and for the costs incurred up to the moment of the tender of this $4. In other words, the court held that the defendant's breach of contract did not give rise to a cause of action.

We think that even upon the facts as stated by defendant himself the sole possible question is as to the quantum of damages. There cannot be a breach of contract with- out a cause of action. The theory of the judgment of the lower court must be that plaintiffs had no cause of action; had no right to vex the ear of the court with their

complaint of disappointment, annoyance, vexation, and mortification. We imagine that if the bankers of New Orleans were to retain Tranchina's at West End for some function or other, and on reaching the place with their guests were blandly informed that the Bar Association, or some other body, were having a banquet in the place, and that the last comers would have to go to a neighboring place that was "just as good," or, vice versa, if the gentlemen of the bar happened to find the princes of finance in possession and were requested to be content with some second choice, but "just as good" a place, there would be considerable annoyance and vexation, which the victims would feel it would take a considerable sum of money to offset. The Rounders are an humbler set, but their complaint has to sound just as loud in the ear of the court.

It is not a question of their getting rich out of the mishap, or of ruining Mr. Moreau for his unpardonable blunder, but simply of awarding such a judgment as will serve as a recognition of the legal situation. Only actual damages can be awarded, and only the minimum which we take to be $75.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be set aside, and it is now ordered, adjudged, and decreed that there be judgment in favor of plaintiffs and against defendant, Charles Moreau, for the sum of $75, with legal interest from this date, and in the further sum of $4, with legal interest from judicial demand, and for costs of suit.