LAWES v. N. O. TRANSFER CO., INC.

(June 10, 1929. Opinion and Decree.)
(July 1, 1929. Rehearing Refused.)
(October 8, 1929. Writ of Certiorari and Review Refused by Supreme Court.)

Howell Carter, Jr., of New Orleans, attorney for plaintiff, appellee.

Chas. I. Denechaud and Ernest J. Robin, of New Orleans, attorneys for defendant, appellant.

WESTERFIELD, J. Plaintiff sues the New Orleans Transfer Company, Inc., to recover the sum of $537.45, the value of a trunk and contents belonging to her, which, she alleges, was lost by the defendant.

The answer admits the loss of the trunk, but contends that defendant's liability is limited to $100, under an alleged contract between plaintiff and defendant for the transportation of her baggage.

There was judgment below for plaintiff as prayed for, and defendant has appealed.

Plaintiff was a passenger on a train of the Southern Railway Company, returning to New Orleans from Hendersonville, N. C. Just before the train reached the depot in New Orleans, an agent of the defendant company solicited the transfer of plaintiff's baggage, as well as the baggage of other passengers. Plaintiff handed the defendant's agent her baggage check calling for a wardrobe trunk, and paid him $1, the sum demanded for transporting the baggage to her residence in the city of New Orleans. She received from the agent a slip of paper which she testified she considered a receipt for the $1, given the agent. On this slip of paper there was printed:

"The rates charged by this company are in each instance based upon a valuation not greater than $100.00 (One Hundred Dollars) per piece. This company will not accept a greater liability than $100.00 (One Hundred Dollars) for each piece of baggage on account of loss or damage, unless a greater value is declared by the owner at the time railroad checks are surrendered to this company, and an additional risk paid for at the rate of ten cents (10c) for each $100.00 (One Hundred Dollars) or fractional part thereof value so declared."

In some way the plaintiff's trunk was lost. It is admitted that plaintiff has fairly appraised her loss.

Defendant argues, and it must be conceded, that it is a common carrier, Liberman vs. Faust, Orleans Appeal, Tessier Digest, p. 40; that it may restrict its liability by special contract, Roberts vs. Riley, 15 La. Ann. 103, 77 Am. Dec. 103; Brauer vs. The Almoner, 18 La. Ann. 266; Luckett & Hunter v. R. Co., 1 La. App. 434; 10 Corpus Juris, p. 133.

But the question in this case is: Was there a contract between plaintiff and defendant which limited her recovery in the case of loss to $100 as stipulated in the printed form attached to the receipt, handed plaintiff by defendant's agent.

Plaintiff, who was the only witness in the case, testified that she did not know that this clause was in the receipt and did not discover it until after the agent had left the train. She valued her trunk in Hendersonville at $400, and paid the charge demanded by the railroad company because of the excess valuation. It is likely that if she had noticed any attempt to limit the liability of the defendant company that she would have declared and paid for an excess valuation.

Be that as it may, the question is

whether she is bound by the limitation of the clause in the receipt, and not whether she knew of its presence in the receipt, because sometimes persons are held to conditions and qualifications in similar cases, when they have not read them and know nothing about them. For example, the clauses limiting the liability of carriers, which appear in bills of lading, are binding upon shippers, whether they have been read, or otherwise. In the case at bar, however, the situation is somewhat different. Here, a local transfer company, upon receiving a railroad baggage check from a patron, issued to her a paper, which she was justified in believing was nothing more than a receipt, or voucher. The distinction we have in mind is well stated in 10 Corpus Juris, p. 141, from which we quote the following:

"A distinction has been drawn, in the matter of the effect of acceptance of receipts, between freight and baggage cases. Thus, although there is some authority to the contrary, it is very generally held that where a person, on delivery of baggage to a local express or transfer company, receives a paper which, from the circumstances of the transaction, he has a right to regard simply as a receipt or voucher, to enable him to forward and identify his property, and no notice is given to show that it embodies a special contract and is intended to serve no other purpose than as a voucher, no contract arises as a matter of law from the acceptance of the receipt, and that carrier, in order to relieve itself from full liability, is bound to establish a contract; omission of the shipper to read the paper is not per se negligence; and the question whether the party receiving such a receipt accepted it with notice of its contents, or with notice that it contained the terms of a special contract, so as to require him to acquaint himself with its contents is one of evidence to be determined by the jury."

The following authorities are very much in point:

"Cases where parties proposing to have articles of property transported by a common carrier, deliberately enter into some necessary contract relating to the transportation, differ materially from those cases of travelers who commit their trunks, or articles of baggage, to an agent of some express or transfer company, and receive at the moment some paper, which, as it has been said, amounts simply to a voucher enabling them to follow and identify their property. (Madan v. Sherard, 73 N. Y. 329, 29 Am. Rep. 153.) The difference is very obvious in the circumstances, which, in the one case, usually admit of no negotiation, or discussion; while in the other, the shipment of the property is a matter of arrangement with full opportunity for deliberate action." Zimmer vs. New York, etc., R. Co., 137 N. Y. 460, 463, 33 N. E. 642.

"An express company's agent, on receiving from a passenger a check for her trunk for delivery at her residence, gave her a paper limiting the carrier's liability to a certain sum. The passenger did not read the paper, and did not know of the limitation, although she had received similar checks on former occasions, and the agent did not inform her of the limitation."

It was held that an instruction stating such facts, and that whether plaintiff knew, or should have known, of the limitation in the receipt was a question for the jury, sufficiently submitted the issue of notice thereof to the jury. Springer vs. Westcott, 166 N. Y. 117, 59 N. E. 693.

"Plaintiff's daughter delivered a check for a trunk to the clerk of the transfer company in New York with instructions to transfer it to her house in Brooklyn. She then turned away and was leaving the office, but, at the suggestion of her companion that she ought to have a receipt, she returned and demanded a receipt of the clerk, who thereupon delivered to her a receipt which stipulated, among other things, that the company should not be liable to an amount exceeding one hundred dollars, unless a special contract was made.

She did not read the receipt or know its contents until after the loss of the trunk."

It was held that she did not assent to the terms of the contract limiting the liability of the company and was entitled to recover on the full value of the trunk. Woodruff vs. Sherrard, 9 Hun (N. Y.) 322.

The Carmack Amendment of June 29, 1906 (49 USCA Sec. 20), permitted carriers to limit their liability by including their regulations in published tariffs. It was held that:

"A regulation contained in the published tariffs of an interstate railway carrier on file with the Interstate Commerce Commission, limiting its baggage liability to $100, unless a greater value is declared and stipulated by the owner and the excess charges paid, is binding upon the passenger in case of loss of the baggage through the carrier's negligence, regardless of the passenger's lack of knowledge of or assent to such regulation, and regardless of the carrier's failure to inquire as to the value of the baggage, or of its outward appearance as indicating greater value, any state law or policy to the contrary having been superseded when Congress, by the amendment of June 29, 1906 (34 Stat. 584, c. 3591, U. S. C. title 49, Sec. 20), to the act to regulate commerce of February 4, 1887 (24 Stat. 379, c. 104) took possession of the subject of the interstate railway transportation of property." Boston & M. R. Co. vs. Hooker, 233 U. S. 97, 34 S. Ct. 526 (58 L. Ed. 868, L. R. A. 1915B, 450).

The rule with respect to interstate carriers does not apply to a local transportation company. In order for such carriers to limit their liability, a customer's assent to the limitation must be evidenced in some manner more convincing than the method shown to have been followed in the instant case.

For the reasons assigned, the judgment appealed from is affirmed.