## MARINE INS. CO., LIMITED, OF LONDON, ENGLAND, v. REHM.*

### No. 16713.

Court of Appeal of Louisiana. Orleans.

Nov. 15, 1937.

E. Howard M'Caleb and Robert Guerard Hughes, both of New Orleans, for appellant.

John B. O'Connor, of New Orleans, for appellee.

WESTERFIELD, Judge.

Simon Klein parked his Plymouth automobile with the "Ideal Parking Lots," as the defendant's business is styled, on the night of June 14, 1936, at about 9 p. m., as he had often done before and received an identification ticket from an attendant after paying or incurring liability for the parking charge, the amount of which does not appear in the record. When he returned to claim his car about three hours later, he was informed that it had been stolen. Some few weeks later the car was found in a damaged condition in Jackson, Miss., having been driven in the meantime a distance of four or five thousand miles. The Marine Insurance Company, Limited, of London, England, Klein's insurance carrier, paid him a total of $300 as the amount of damage sustained by his car and was given a subrogation by Klein to his claim against Rehm, the defendant, whereupon the insurance company brought this suit against Rehm for reimbursement. The petition alleges that the theft of the automobile was due to the negligence or want of care of the defendant in failing to maintain a proper guard, an adequate force of employees, or sufficient illumination. The defendant in his answer denied all charges of negligence.

On the trial of the case it was admitted that Simon Klein had parked his car in the Ideal Parking Lot owned and operated by defendant and that it was stolen while so parked. It was further admitted that the Marine Insurance Company, Limited, of London, England, had paid Klein $300 to cover the damage to his car and that it had received a full subrogation of Klein's claim against Rehm.

There was judgment below dismissing plaintiff's suit and it has appealed.

The "Ideal Parking Lots" are situated on opposite corners of Elks place and Cleveland avenue. One of the lots, the larger, measures 62 feet, 2 inches on Elks place, 127 feet, 11 inches on Cleveland avenue, and 61 feet, 6 inches on Loyola street. The dimensions of the other lot are not im-

*Rehearing denied Dec. 13, 1937; writ of certiorari denied Feb. 7, 1938.

**80**

portant. The larger lot is open on all sides but one, which is closed by the wall of the Elks'. building. A car could be driven off of. the lot from practically any. point on the three streets, Loyola, Cleveland avenue, and Elks place. There were but two lights located on the rear of the lot about 60 feet apart.

On the night of the theft, June 14, 1936, Joe Molenear and Jack McCray, two of defendant's employees, were on duty and about thirty-five cars were parked on the lot. According to the testimony of Molenear, the car was stolen before 10 p. m. or less than an hour after it had been parked with defendant. Molenear was approaching the Klein car, being about midway of the main parking lot, for the purpose of taking it across the street to the smaller lot to relieve congestion on the larger lot, when he noticed that the motor of the Klein car was running and suspected that "something was wrong." He had some tickets in his hand at the time and went to the front of the lot and away from the Klein car, a distance of about 63 feet, to where the other attendant, Jack McCray, was standing and gave him the tickets. As he started back to the Klein car, it was moving off, whereupon he entered another car and chased the thief through traffic for several blocks and finally lost him. As we have said, the defendant maintained two parking lots and there were on duty on the night of the theft of the Klein car only two employees.

■ The first· defense presented in this court in argument and in brief is based upon the phraseology of the identification tag received by Klein when he parked his car, which reads in part, as follows:

"While we at all times endeavor to protect the property of our patrons, we will not be responsible for loss or damage to automobiles, or accessories thereto, or anything therein contained, by fire, theft, or any other cause whatsoever, except damage to automobiles and/or accessories thereto attached while being handled on our premises by our employees under our orders."

Klein testified that he knew nothing of what was written on the tag until after his car was stolen. The defendant, however, regards his acceptance of the ticket as constituting a contract between the parties.

In Lawes v. New Orleans Transfer Company, 11 La.App. 170, 123 So. 144, we held that a person who receives a check for baggage intrusted to a transfer company is not bound by an inscription on the baggage check limiting liability of the transfer company in the absence of proof of assent by the passenger. In that case we quoted with approval the case of Springer v. Westcott, 166 N.Y. 117, 59 N.E. 693, where the Court of Appeals of New York considered the effect of a provision on a check given to a passenger by an express company's agent, which limited the carrier's liability. The court approved the following charge to the jury which had been the subject of exception by the defendant:

"The defendant claims that the plaintiff knew the contents of the paper, because she had on previous occasions, while traveling on said railroad, had her baggage sent by the defendant's agent, and had received from him a receipt with some printing on it, and of the same kind as the one in question. If you find from the entire evidence, and under the instructions of the Court, that the plaintiff knew the character of the paper so received by her from the defendant's agent, or accepted it with notice of its contents, or with notice that it contained the terms of a special contract, so as to make her acquaint herself with its contents, and neglected to do so, the limitation of $100.00 applies; and in that same event, even though you may find the plaintiff is entitled to your verdict, she cannot recover more than such sum. If, however, you find from all the circumstances that the plaintiff did not know the paper writing in question was proffered as a contract, and received it not knowing its contents, and satisfied it was given her simply to enable her to trace her property, or a mere receipt, then the plaintiff is not bound by its limitation. * * *"

In our opinion the check given by the defendant in this case to Klein upon the receipt of his automobile was nothing more than a means of identifying his property or a mere receipt and was not a special contract.

Articles 2937 and 2938 of the Revised Civil Code provides:

Article 2937: "The depositary is bound to use the same diligence in preserving the deposit that he uses in preserving his own property."

Article 2938: "The provision in the preceding article is to be rigorously enforced: * * *

"2. If it has been agreed that he shall have a reward for preserving the deposit."

In the early cases dealing with the loss of cars from parking lots, considerable difficulty was experienced in defining the nature of the contract. In the relatively early case of Galowitz v. Magner (1924) 208 App. Div. 6, 203 N.Y.S. 421, 423, decided by the Appellate Division of the Supreme Court of New York, Judge Young, the author of the opinion, states:

"I have not been able to find any authority covering such a contract as that presented in this case. I think, however, it was a bailment for hire. It was, in my opinion, of the same nature as checking parcels, and the disclaimer of liability could only become effective, if brought to plaintiff's knowledge (Healy v. New York Central & H. R. R. Company, 153 App.Div. 516, 138 N.Y.S. 287), or storing an automobile in a garage (Smith v. Economical Garage, 107 Misc. 430, 176 N.Y.S. 479)."

In that case, as in the present case, the ticket given for the parked cars contained a disclaimer of liability. At another point in the decision the court said:

"The proof in this case is very meagre, but is in my opinion sufficient to present a question of fact for the jury. Where a space is enclosed by an 8-foot board fence, for parking cars, with an entrance and an exit, a checking system, and three attendants to look after and take care of the cars as they came in and went out, the jury might infer that the theft of plaintiff's car could not have occurred had defendant and his employees properly performed their duty. Indeed, it seems to me that such inference is well-nigh irresistible, because some one must have taken out plaintiff's car without presenting a check or ticket therefor, and to permit this was clearly negligent."

In Ex parte Mobile Light & R. Company, 211 Ala. 525, 101 So. 177, 178, 34 A.L.R. 921 (decided in 1924, the same year as the Galowitz decision), a case much relied upon by defendant, the Supreme Court of Alabama held that there was no bailment of an automobile left by an owner in a parking lot. To quote from that opinion:
"The first inquiry suggested by these facts is whether there was a bailment. It is shown that defendant maintained a 'parking place' where patrons of the nearby baseball park could park their cars. * * *

"We conclude the complaint does not show a bailment, with the legal duty to exercise reasonable care against theft as incident to that relation."

In General Exchange Insurance Corporation v. Service Parking Grounds, Inc. (1931) 254 Mich. 1, 235 N.W. 898, 900, the Supreme Court of Michigan in a case involving facts very similar to those presented by the case at bar held an operator of a parking lot liable for the theft of a customer's automobile. The suit was by an insurance company, the subrogee of the owner of the car which had been parked with the defendant. The court cited Galowitz v. Magner, supra, with approval and held:

"The burden was on defendant, not only to show that the car was stolen, but also that the theft took place without any negligence on his part. As a rule automobiles brought in after 8:00 a. m. were left unlocked. Attendants were supposed to be at the parking lot so that cars could not be taken away without a surrender of the ticket given to the owner. It was defendant's duty to see that cars were not removed, except upon surrender of the ticket."

In Baione v. Heavey (1932) 103 Pa. Super. 529, 158 A. 181, 183, a case in which plaintiff claimed $194.70 as damage sustained to his automobile as the result of a theft from a parking lot on Market street in Philadelphia, the Superior Court of Pennsylvania held:

"When plaintiff presented the ticket, it was defendant's duty to obtain the car from the place where his employee had put it, and deliver it to plaintiff; he could not deliver it, nor could he explain what had become of it consistently with the performance of the duty assumed by him in the circumstances."

In that case the defendant contended that the relation of the parties was that of landlord and tenant and not bailor and bailee, a contention which the court rejected, holding the defendant to the greater responsibility of bailor and bailee. It is interesting to note that the parking lot in the Baione Case was very similar in character to the one in the instant case. It was "158 feet on Market street, 180 feet on Twentieth street and 158 feet on Commerce street; the eastern boundary is a brick wall of a building. On this lot, which is unfenced, defendant conducts the business of parking automobiles."

In Doherty v. Ernst (1933) 284 Mass. 341, 187 N.E. 620, 621, the Supreme Judicial Court of Massachusetts held that "the facts found by the trial judge, that the plaintiff parked his automobile on the defendant's lot and paid him twenty-five cents, the usual amount charged by the defendant for such parking, constituted the defendant a bailee for hire as he thereby took the automobile in his care and custody for a compensation. The nature or amount of the compensation received was immaterial as the law will not undertake to determine the adequacy of the consideration." It appeared in that case that five minutes after the plaintiff left his automobile with the defendant, the operator of a parking lot, he, the defendant, saw a stranger drive it from the place where it was parked and across the curbing and did nothing to prevent its removal. The automobile was later found by the police abandoned and damaged. The court approved the finding in favor of the plaintiff based upon his failure to prevent the removal of the automobile.

In Hartford Fire Insurance Company v. Doll, 5 La.App. 226, it was said:

"A bailee for hire is not an insurer of the chattel left in his hands. But he is required to use due and ordinary care in the protection of the article and is bound to restore it when the bailment is at an end.

"It is contended by defendant that he assumed no special obligation to protect and restore this car, but we think he did. The printed receipt or coupon evidences that fact. But even if he did not, he is still liable under the general law of bailment in which there is an implied obligation on the part of the bailee to keep and return the property; and unless it is shown that the property was lost without negligence on his part, he is liable for its value."

In 6 Corpus Juris page 1112, we read:

"The parties to a bailment may diminish the liability of the bailee by special contract, the principle being that the bailee may impose whatever terms he chooses, if he gives the bailor notice that there are special terms and the means of knowing what they are; and if the bailor chooses to make the bailment, he is bound by them, provided the contract is not in violation of law or of public policy, and that it stops short of protection in case of fraud or negligence of the bailee; and provided further that the terms of the contract are clear, such stipulations being to be strictly construed."

It will thus be seen by the great weight of authority that under the common law a parking lot proprietor is held to the obligation of a "bailee for hire." Under the civil law the relation is that of a compensated depositary under articles 2937 and 2938 of the Revised Civil Code heretofore quoted, though the term "bailee" is often used by our courts. The obligation of a depositary is "to use the same diligence in preserving the deposit that he uses in preserving his own property" and this obligation "is to be rigorously enforced" when "it has been agreed that he shall have a reward for preserving the deposit." The proprietor of a parking lot who collects a fee for parking automobiles is a compensated depositary, who must be held strictly to his obligation to take as good care of the deposited automobile as he would of his own. It was argued that parking lots charge only a nominal fee and perform a much needed public service and that to hold the proprietors of such places to strict accountability would discourage their continuance in business with resultant loss to the public of a great and growing convenience, particularly in large centers of population. Also it is said that a depositary is not an insurer of the deposit. If the application of appropriate statutory regulation to a business like defendant's is not in the public interest, the Legislature and not the courts should be appealed to. Nothing that we have said in this opinion can be construed as imposing upon defendant the obligation of an insurer.

In our opinion the charges of negligence against the defendant have been established. It appears to us that there were not a sufficient number of employees to properly safeguard the property of defendant's customers and it also appears that the lots were insufficiently illuminated to prevent the removal of the cars by unauthorized persons without detection. Moreover, the attendant Molenear who heard the motor of Klein's car running and suspected the theft was guilty of negligence in not repairing immediately to the car and prevent its abstraction from the lot. In first going 63 feet in the other direction for the trivial purpose of delivering his tickets to the other employee on duty, he wasted valuable time which, as it afterwards clearly appeared, would have enabled him to prevent the departure of the thief with Klein's car.

For the reasons assigned, the judgment appealed from is annulled, avoided, and reversed and it is now ordered that there be judgment herein in favor of the plaintiff, Marine Insurance Còmpany, Limited, of London, England, and against the defendant, Dan Rehm, in the full sum of $300 with legal interest from judicial demand and for all costs.

Reversed.

McCALEB, J., recused.