22 So.2d 189

**VOGEL v. SAENGER THEATRES, Inc.**

No. 37542.

March 26, 1945.

Rehearing Denied April 30, 1945.

H. W. & H. M. Robinson, of New Orleans, for plaintiff and appellant.

Rosen, Kammer, Wolff, Hopkins & Burke, of New Orleans, for defendant and appellee.

HAMITER, Justice.

To recover damages of $250 for the humiliation and embarrassment which he allegedly sustained on his being ejected from the Saenger Theatre in the City of New Orleans, plaintiff instituted this action in the First City Court of that city against the theatre owner. Defendant, now known as the Paramount-Richards Theatres, Inc., answered, denying generally the allegations of the petition.

The demands of plaintiff were rejected and he appealed to the Court of Appeal. On the appeal, with one of the three judges dissenting, the judgment was affirmed. Thereafter the case was brought here on a writ of certiorari or review.

The record discloses that plaintiff is a cripple, this by reason of his right leg being two and one-half inches shorter than his left, and in walking he is required to use a crutch. His crutch, however, does not handicap him unduly, for he is able to perform most of the acts of the physically normal person, including dancing, driving an automobile, and riding a motorcycle.

Besides, he supports a family of five persons.

About 9 o'clock of the evening of Saturday, May 1, 1943, accompanied by his wife, he appeared at the box office of the Saenger Theatre, a moving picture establishment of New Orleans, and personally purchased two tickets at the cost of 50 cents each. As he and his wife entered the theatre's foyer, the receptionist received and accepted the tickets, tore them in half, and gave him the usual stubs. Momentarily thereafter, the receptionist, on noticing that plaintiff was a cripple, informed him that he would not be permitted to witness the show because of his crippled condition.

Then, at plaintiff's request, there was summoned the manager who also told him that he could not remain, explaining that by a rule or policy of the theatre, adopted in the interest of the safety of its patrons, no crippled persons are permitted there on Saturdays, Sundays, or holidays such as Christmas or the Fourth of July. Admission, under the regulation, the manager further explained, is granted them only at the first shows from Mondays to Fridays, both days inclusive, and then provided they occupy seats in certain designated sections near the exits, these being aisles 1 and 6.

This rule was unknown to plaintiff at the time he purchased the tickets and entered the theatre; the existence of it was not made public by a sign affixed to the box office or elsewhere in the theatre, nor was it otherwise brought to his attention.

The manager testified that he told plaintiff, who was "obviously put out" (surprised) when informed of the rule, that: "Although this is Saturday, we are not very busy, if you will sit in aisle 1 or aisle 6, I'll make an exception this time, although I should not." But it is not at all certain that this offer occurred. The pleadings of defendant contain no allegations to support it; no corroborating testimony is in the record; and plaintiff emphatically denies that it was made.

After considerable argument between plaintiff and the manager, the latter took the two untorn tickets held by plaintiff (the receptionist had substituted these for the stubs when the difficulty arose) and gave him a dollar, the cost of them. Thereupon plaintiff and his wife departed. Several weeks later this suit was filed.

The basis for the Court of Appeal's decision, which affirmed the trial court's judgment rejecting plaintiff's demands, appears to be the pronouncement found in the majority opinion that "* * * in the absence of a special statute, the proprietor of a theatre may exclude any one, with or without reason, as was expressly held by this Court in Gorman et al. v. United Theatres, La.App., 177 So. 463, * * *." [17 So.2d 467, 468.]

What was said in the Gorman case, to which reference is made, is the following:

"The law is well settled that a theatre ticket is a license which may be revoked at the pleasure of the proprietor of the theatre, without giving any reason therefor, and the possessor of the ticket may be required to leave the theatre by force if necessary.

" 'In England, where a ticket to a theatre is not revocable, the holder of a ticket who is behaving himself properly and is forcibly removed from the theatre may recover substantial damages therefor in an action of tort. In America, where the ticket is revocable, where, on revocation, no more force is used than is necessary to prevent the ticket holder from entering and to remove him after entering, he may maintain an action for breach of contract, but this is his only remedy. An action of tort will not lie.' 62 Corpus Juris, p. 862. See, also, Russo v. Orpheum Theatre & Realty Co., 136 La. 24, 66 So. 385, L.R.A. 1915B, 1119."

The Russo case, as we appreciate it, does not support the principle of law in connection with which it was there cited. In it the court merely held that plaintiff's own disorderly conduct, shown by the evidence in the record, caused his humiliation and his eviction from the theatre, and that the judgment rejecting his demand for damages was correct.

It is true that such announced principle is supported by the text of 62 Corpus Juris, verbo Theatres and Shows, Sections 40 and 42, pages 861 and 862 (an extract from Section 42 is quoted in the Gorman case). But listed in the footnotes pertinent to that text are only cases from other jurisdictions; not one is from Louisiana. An examination of those cases discloses a general holding by the courts of other states that a purchased admission to a theatre constitutes a contract between the proprietor and purchaser, and, while it is revocable, the proprietor is liable in an action

of assumpsit on its breach for all contractual damages which the purchaser sustained; that embarrassment and humiliation resulting from the breach are not elements of contractual damages; and that a suit in tort (in which those elements are usually recognized) can not be maintained unless the breach was accompanied by unwarranted roughness or other tortious acts.

In line with that general holding in other jurisdictions is the comment contained in Williston on Contracts (Revised Edition) Section 1340A that: "Mental suffering caused by breach of contract, though it may be a real injury, is not generally allowed as a basis for compensation in contractual actions. Pecuniary loss is the usual measure. There are, however, exceptions conceded in many jurisdictions." Among the exceptions pointed out are cases in which an element of tort exists, and contests involving the deeper emotions such as those relating to the non-receipt of, or error in, telegrams announcing the illness, death, or funeral, of a relative, or the like.

Also disclosing the prevailing common-law doctrine are the following extracts taken from 52 American Jurisprudence, verbo Theatres, Shows, Exhibitions, etc., Sections 4 and 12:

"4. It is the majority rule in this country that a ticket of admission to a theatre or place of public amusement confers on a purchaser thereof a mere license to witness the performance, which the owner or proprietor may revoke at will, either before or after admission of the ticket holder, and that in the absence of aggravating

circumstances, a revocation is actionable only as a breach of contract, and it has been held immaterial whether the ticket is one for general admission or for particular seats or to a designated portion of the place of amusement * * *."

"12. Under the majority rule stated above, revocation of a ticket of admission amounts to no more than revocation of a bare license, which renders the owner or proprietor liable only in an action ex contractu for actual damages, and the amount recoverable as damages for the revocation of such license is usually held to be limited to the amount paid for the ticket and the necessary expenses incurred in attending the performance. Mental suffering from the humiliation is not an element of damage in such a case, even, it has been held, where a patron was ejected without cause and as the result of mistaken identity * * *."

▇ To find the rule that prevails in Louisiana, one needs to look no farther than the sentence which follows the last-quoted extract from 52 American Jurisprudence, Section 12. It reads: " * * * On the other hand, there are decisions which take the view that a ticket holder wrongfully expelled under humiliating circumstances is entitled to recover damages for the indignity and disgrace attending the expulsion."

In support of that sentence there is cited in the applicable footnote the case of Planchard v. Klaw & Erlanger New Orleans Theatres Co., 166 La. 235, 117 So. 132, 133, 60 A.L.R. 1086.

In the Planchard case this court said:

"On the other hand, people who visit such places of amusement and entertainment, and who are not guilty of any unseemly conduct, wrongdoing, or disturbance, are entitled to full protection at the hands of the managers of the theater in the enjoyment of the privilege for which they have paid their money.

"And where, as in this case, a patron of a theater is insulted, maltreated, and caused to leave the theater by an employee of such theater without just, reasonable, or probable cause, such theater will be held liable in damages."

Of course, the Planchard case presented a factual situation slightly different from that of the instant controversy; but its decision reasonably sustains the textual statement to which the footnote listing refers.

There are other cases in our jurisprudence in which damages were awarded for mental suffering that concerned purely elements of embarrassment and humiliation. In Lewis v. Holmes, 109 La. 1030, 34 So. 66, 61 L.R.A. 274, a New Orleans department store, the defendant, failed to deliver certain dresses for a bride's trousseau, and the wedding dress was poorly made. There the court granted to plaintiff, the bride, damages for her resulting humiliation and embarrassment. In O'Meallie et al. v. Moreau, 116 La. 1020, 41 So. 243, plaintiffs, members of a social club, claimed and proved the breach of defendant's contract to furnish to them a certain pavilion. For the disappoint-

ment, annoyance, vexation and mortification occasioned them by the breach, they were awarded damages.

The doctrine recognized in this state, and adhered to in our jurisprudence, stems from the following provisions of Louisiana Civil Code Article 1934:

"Where the object of the contract is any thing but the payment of money, the damages due to the creditor for its breach are the amount of the loss he has sustained, and the profit of which he has been deprived, under the following exceptions and modifications:

\*    \*    \*    \*    \*    \*

"Although the general rule is, that damages are the amount of the loss the creditor has sustained, or of the gain of which he has been deprived, yet there are cases in which damages may be assessed without calculating altogether on the pecuniary loss, or the privation of pecuniary gain to the party. Where the contract has for its object the gratification of some intellectual enjoyment, whether in religion, morality or taste, or some convenience or other legal gratification, although these are not appreciated in money by the parties, yet damages are due for their breach; a contract for a religious or charitable foundation, a promise of marriage, or an engagement for a work of some of the fine arts, are objects and examples of this rule."

Obviously, therefore, the distinction between the law of this state and that of most of the other jurisdictions, relative to the right of a theatre ticket purchaser to recover for mental suffering upon the proprietor's breach of contract without just cause, is found in the kind and character of the elements to be considered in the assessment of damages. In Louisiana consideration is to be given not only to pecuniary factors but also to intellectual or mental elements, in connection with the last of which recovery for humiliation and embarrassment is allowed, these constituting actual and legal damages. The prevailing common-law rule, on the other hand, does not recognize mental suffering from humiliation as an element of damage.

But, in the instant case, defendant insists that even if the rule of Louisiana be different from that of most of the common-law states the plaintiff cannot recover because of certain language, constituting a limitation of defendant's contract, printed on the ticket which he purchased. In very small type this statement appears: "The management reserves the right to refuse admission on this ticket by refunding purchase price. Also reserves the right to designate where the holder of this ticket shall be seated."

The ticket itself, as we appreciate it, does not constitute a special contract between the parties; it is only evidence of the fact that the customer has contracted for admission to the theatre and has fulfilled his part of the agreement. Among the innumerable theatre-goers, not one in a thousand, we dare say, is aware of the printed limitation quoted above; the average patron accepts his ticket as a mere receipt or acknowledgment of his having paid the price required of him. Until

such a legend is called to the attention of the customer in some appropriate manner, in our opinion, it is not binding on him. To hold otherwise would permit places of amusement to limit, by the use of small printing on the admission ticket, practically all of their duties and obligations toward the patrons, this without the knowledge and consent of the latter. Defendant has not shown that plaintiff was aware of the limitation; hence, it does not foreclose his right to recover herein.

Analogous, we think, are those cases dealing with parking lot tickets and baggage checks in which it has been held that the holder of an instrument of that kind, in the absence of proof of his assent, is not bound by any inscription thereon limiting the liability of the party issuing it. Lawes v. New Orleans Transfer Company, 11 La.App. 170, 123 So. 144, Court of Appeal, Orleans Circuit; Marine Insurance Company v. Rehm, La.App., 177 So. 79, Court of Appeal, Orleans Circuit, Certiorari denied by this court February 7, 1938; and Kaiser v. Poche, La.App., 194 So. 464, Court of Appeal, Orleans Circuit.

Defendant further argues that no unnecessary humiliation or embarrassment was visited upon plaintiff since the theatre was not busy at the time and no other patrons noticed the incident. The fallacy

of this argument is that it overlooks the fact that plaintiff's wife and several lady employees or attendants of the theatre were present. Undoubtedly he experienced just as much embarrassment and humiliation before them as he would have before patrons. And for his mental suffering he is entitled to recover the amount for which he sues, namely $250.

In view of the conclusion reached herein we deem it unnecessary to determine the applicability or the question of the repeal of Act 38 of 1869 (later incorporated in the Revised Statutes as Sections 456, 457, 458 and 459), which Act is cited and relied on by plaintiff and discussed at length in both the majority and dissenting opinions of the Court of Appeal.

For the reasons assigned the judgments of the First City Court of the City of New Orleans and of the Court of Appeal, Parish of Orleans, are reversed and set aside, and there is now judgment in favor of plaintiff, George Vogel, and against the defendant, Paramount-Richards Theatres, Inc., in the full sum of $250, with legal interest thereon from judicial demand until paid. Costs of all courts shall be paid by defendant.

O'NIELL, C. J., does not take part.